## J. M. HOPKINS v. THE ST. LOUIS & SAN FRANCISCO RAILWAY COMPANY.

WRITTEN CONTRACT; *Oral Evidence.* Oral evidence is not competent, in the absence of fraud or mistake, to show that the parties to a written contract stipulated before the execution of the writing for something contrary to what is there expressed, or to what is legally implied.

*Error from Wilson District Court.*

ON the 9th day of May, 1881, plaintiff, with leave of the court, filed his amended bill of particulars against the *St. Louis & San Francisco Railway Company,* alleging that—

"The latter company is justly indebted to the plaintiff in the sum of $270; that said sum is, and was at the commencement of this action, due and wholly unpaid; that during all of the two years last past said defendant was and now is operating, controlling and managing a line of railroad from the city of Wichita, in the state of Kansas, in and through this county of Wilson, to the city of St. Louis, in the state of Missouri; that during all said time defendant was and now is engaged in the business of a common carrier, both of passengers, and of live stock of all kinds, and other freights, using said line of railroad and the rolling stock thereto belonging for that purpose; that during a portion of said time plaintiff was engaged in the business of buying hogs and cattle and shipping the same from the county of Wilson to the city of St. Louis, in the cars of defendant and over defendant's line of railroad aforesaid, which shipments amounted to twenty-seven car-loads of stock aforesaid; that prior to the shipping of said twenty-seven car-loads as aforesaid, the plaintiff entered into an agreement and contract with the de-

fendant, by the terms of which agreement the defendant was to carry plaintiff's stock at as low rates and for the same price per car that defendant charged and actually received from any other person or persons for like services; that plaintiff was to have and receive the same rebates and drawbacks that the defendant gave to any other person or shipper, or was allowed to any person for like shipments over said line of railroad during the time and times plaintiff was making his shipments. Plaintiff avers that the defendant violated said agreement in this: that the defendant charged him, the plaintiff, the same rate per car (which rate was full schedule rates) that the defendant pretended to charge other and like shippers for same services, but which was in fact $10 on the car more than that charged to and received from other and like shippers—that is to say, that the plaintiff paid $60 from Neodesha, in this county, and $65 from Fredonia, in this county, to St. Louis, per car, when in truth and in fact the defendant charged and received from other and like shippers only $50 from Neodesha and $55 from Fredonia to the city of St. Louis per car; that the difference of $10 on the car was made by the defendant paying and causing to be paid to said shippers a rebate and drawback of $10 on a car; that plaintiff presented to defendant his claim for drawbacks and rebates in the manner and form, and at the place designated and required by defendant, and in the manner and form at the place done by other and like shippers for similar and like services, but that defendant, with the intent to cheat and defraud the plaintiff, did then and there, and has ever since continued to, fail and refuse to pay and allow said rebate and drawback, or any part thereof, though plaintiff had shipped all of the twenty-seven car-loads of stock as aforesaid, and had paid to defendant the full rate of $60 and $65, all of which defendant then and there well knew.

"Plaintiff says that at all time and times while engaged in buying and shipping all of the twenty-seven car-loads of stock as aforesaid, he relied upon the statements made by defendant concerning the rates to be charged by defendant, and upon the agreement and contract as above set forth. Plaintiff therefore prays judgment against defendant for the sum of two hundred and seventy ($270) dollars and costs."

The defendant made answer as follows:

"Comes now the defendant by its attorney, and having ob-

tained leave therefor, for its answer to the bill of particulars says that it denies each and every allegation in said bill of particulars contained.

"For a further defense and answer, defendant alleges that prior to receiving each car of stock mentioned in the bill of particulars, it, the St. Louis & San Francisco railway company, entered into a contract in writing with the plaintiff, by the terms of which the defendant undertook to ship each car of stock mentioned at the sum of $50 for each car-load; and it was further stipulated in each of said contracts that in consideration of said rate being a less sum than the regular rates charged from said points to the city of St. Louis, the plaintiff assumed all risk in shipping stock."

To this plaintiff filed the following reply:

"Now comes the plaintiff, and for answer and reply says that he did, at the time of shipping each car-load of stock, enter into a written contract with defendant in manner and form as did other and 'like shippers; that a copy of one of said contracts is hereto annexed, marked 'A,' and made a part hereof; that all the other written contracts made between plaintiff and defendant at the time of shipping were similar in form, save as to dates, number of cars, and place of shipment, and price per car, which place of shipment was sometimes at Fredonia, and in that case the price per car inserted in said contracts was $65 per car. Plaintiff says that each of said written contracts only operated, and it was the understanding of the parties thereto that it should operate, to fix the responsibility of the defendant as to any damages plaintiff might sustain on the stock so shipped; that the same consideration was set forth in the written contracts of said other and like shippers, and as it is the custom and practice of defendant to do and make in all cases of like shipments; that notwithstanding said written contracts defendant paid to other and like shippers a rebate and drawback of ten dollars per car; that at the time plaintiff entered into each and all said written contracts, he, the plaintiff, relying upon the prior agreement, understood and believed that he would and should be entitled to receive the usual rebates and drawbacks allowed to other and like shippers."

· EXHIBIT A.

FORM 1134.

*St. Louis & San Franciso Railway Co.*

DUPLICATE.

| NO. OF CAR. | INITIALS. |
|-------------|-----------|
| *3147.* | *4* |
| *3352.* | " |

Rules and regulations for the transportation of live stock: . Live stock of all kinds at the following estimated weights, first-class rates: One horse, mule, or horned animal, 2,000 lbs. Two horses, mules, or horned animals, 3,500 lbs. Three horses, mules, or horned animals, 5,000 lbs. Each additional animal to be rated at 1,000 lbs. Stallions, 4,000 lbs. Calves and sheep, one, two hundred lbs., but in no case less than 50 cents. Pigs and store hogs, actual weight.

In case the owner or consignor agrees to save the St. Louis & San Francisco railway company from liability for any or all of the causes enumerated in the following contract, and also agrees to load, unload, feed, water and attend to the stock himself, etc., as specified therein, the special rates of tariff based on such contract will be given.

The said St. Louis & San Francisco railway company as aforesaid will not assume any liability over one hundred dollars per head on horses and valuable live stock, except by special agreement.

For the purpose of taking care of the stock, the owner or men in charge will be passed on the train with it, and all persons thus passed are at their own risk of any personal injury from any cause whatever, and must sign release to that effect indorsed on contract.

*Live Stock Contract.*

NEODESHA STATION, Aug. 2, 1880.

This agreement, made between the St. Louis & San Francisco railway company of the first part and J. M. Hopkins of the second part, witnesseth: That whereas the said St. Louis & San Francisco railway company as aforesaid transports live stock only as per above rules and regulations, now, in consideration that the said party of the first part will transport for the party of the second part two car-loads of hogs to St. Louis, Mo., station, at the rate of sixty dollars ($60) per car-load, the same being a special rate, lower than the regular rates mentioned in its tariff, the party of the second part hereby releases the party of the first part from the liability of a com-

mon carrier in the transportation of said stock, and agrees that such liability shall be only that of a private carrier for hire; and from any liability for any delay in shipping said stock after the delivery thereof to the agent of the party of the first part, or for any delay in receiving the same after being tendered to said agent.

And said party of the second part hereby accepts for such transportation the cars provided by said first party and used for the shipment of said stock, and hereby assumes all risk of injury which the animals or either of them may receive in consequence of any of them being wild, unruly or weak, or maiming each other or themselves, or in consequence of heat, or suffocation, or other ill effects of being crowded in the cars, or on account of being injured by the burning of hay, straw, or other material used by the owner for feeding the stock or otherwise, and all risk of damage which may be sustained by reason of any delay in such transportation, and all risk of escape or robbery of any portion of said stock, or of loss or damage from any other cause or thing not resulting from the willful negligence of the agents of the party of the first part.

And the party of the second part further agrees that he will load, unload and reload said stock at his own risk, and feed, water and attend to the same at his own expense and risk while it is in the stock yards of the party of the first part awaiting shipment, and while on the cars or at feeding or transfer points, or where it may be unloaded for any purpose.

And it is further agreed that the party of the second part will see that said stock is securely placed in the cars furnished, and that the cars are safely and properly fastened so as to prevent the escape of said stock therefrom.

And it is further agreed that in case the party of the first part shall furnish laborers to assist in loading and unloading said stock at any point, they shall be subject to the orders and deemed the employés of the party of the second part while so assisting.

And for the consideration before mentioned the party of the second part further agrees that as a condition precedent to his right to recover any damages for any loss or injury to said stock, he will give notice in writing of his claim therefor to some officer of said party of the first part or its nearest station agent, before said stock is removed from the place of destination above mentioned or from the place of delivery of the same to the party of the second part, and before such stock is mingled with other stock.

This contract does not entitle the holder or other parties to ride in the cars of any train except the train in which his stock referred to herein is drawn or taken. Neither does it entitle him (and the party of the second part named in this contract expressly so stipulates, admits and agrees) to return passage from St. Louis to Neodesha, unless this contract is presented within ten days from the date hereof; nor does it entitle any person except the party of the second part and parties who accompany him in charge of said stock, for the purpose of assisting him in taking care of the same, as specified in and upon this contract, and does not include women, infants, or other persons unable to do and perform the services required as expressed on this contract, to such return passage within the said ten days; the object, purpose and intent of the return pass being to enable the party of the second part hereto, or his men in charge as expressed in contract, and no other person, to return to Neodesha thereon at any time within ten days from date hereof and not thereafter.

And it is further stipulated and agreed between the parties hereto that in case the live stock mentioned herein is to be transported over the road or roads of any other railroad company, the party of the first part shall be released from liability of every kind after said live stock shall have left its road; and the party of the second part hereby so expressly stipulates and agrees; the understanding of both parties hereto being that the party of the first part shall not be held or deemed liable for anything beyond the line of the St. Louis & San Francisco railway company, excepting to protect the through rate of freight named herein.

The evidence that the said party of the second part, after a full understanding thereof, assents to all the conditions of the foregoing contract, is his signature hereto.

M. S. HILTON,
*Agent for St. Louis & San Francisco Railway Company.*

J. M. HOPKINS, *Shipper.*

Witness:
[To be other than either of the contractors. Executed in duplicate.]
J. B. KEYS.

At the September Term of the court for 1881, the case was heard on the motion of the defendant for judgment on the pleadings. Judgment was entered thereon for defendant, and plaintiff now brings the case here.

*James A. McHenry*, for plaintiff in error.
*S. S. Kirkpatrick*, for defendant in error.

The opinion of the court was delivered by

HORTON, C. J.: If we can say upon the pleadings filed by the parties that the defendant was entitled to judgment, it cannot be said that the court below committed any material error. (*Douglas v. Rinehart*, 5 Kas. 392.) Prior to the execution of the written contract set forth in the pleadings, it is alleged that a verbal contract was entered into between plaintiff and defendant, whereby, if the former shipped live stock over the latter's line of road from Neodesha and Fredonia, Kansas, to St. Louis, Missouri, plaintiff was to have the usual rebates allowed like shippers of live stock over the road. This verbal contract is contrary to and in conflict with the subsequent written contract. It is the general rule that oral evidence is not competent (in the absence of fraud or mistake) to show that the parties stipulated at or before the execution of the written contract for something contrary to what is there expressed, or what is legally implied. While it is true that a written contract does not exclude the possibility of a valid cotemporaneous parol contract, yet in such cases the parol contract must be separate and independent from the written one, and must in no respects be contradictory or conflicting therewith.

Again, parol evidence is sometimes competent to explain the understanding of the parties where a contract is partly written and partly verbal, but in the case at bar none of these exceptions applies. Plaintiff could not recover upon the pleadings unless it were competent for him to establish by oral evidence that the written contracts entered into by him at the time the cars of stock were shipped were subject to and controlled by the previous parol agreement. This could not be done. (*Weeks v. Medler*, 20 Kas. 57; *Railway Co. v. Maddox*, 18 id. 546; *Cornell v. Railway Co.* 25 id. 613.)

The judgment of the district court will be affirmed.

All the Justices concurring.