All the Justices concurring.

---

THE ST. LOUIS WIRE-MILL COMPANY v. THE CONSOLIDATED BARB-WIRE COMPANY.

1. WRITTEN INSTRUMENT, *Differing from Parol Contract — Enforcement.* Where a parol contract for the purchase of goods is made between the parties, but at the same time an instrument in writing purporting to be the contract, but which, as to prices, was never intended by the parties to be the contract, is signed by the purchaser, and such writing is made to differ, as to prices, from the real contract, because of an illegal and existing combination previously entered into on the part of the seller with other dealers in the same kind of goods to enhance the prices of that kind of goods in the market above their real value, *held,* that the writing cannot be enforced, as to the prices therein mentioned, by the seller, against the other party, and as against the real contract of the parties, although such real contract exists only in parol.

2. AGENT'S STATEMENTS — *Evidence.* Where an agent makes a contract for his principal, and afterward, in an attempted settlement between

the parties, makes statements with reference to the terms of the contract, *held*, that such statements may be shown in evidence by the adverse party where parol evidence would be competent.

### *Error from Douglas District Court.*

ACTION to recover on an account. Judgment for the defendant *Barb - Wire Company*, at the November term, 1888. The plaintiff *Wire-Mill Company* brings the case to this court. The facts are substantially stated in the opinion.

*D. S. Alford*, for plaintiff in error.

*S. O. Thacher*, for defendant in error.

The opinion of the court was delivered by

VALENTINE, J.: This was an action brought in the district court of Douglas county by the St. Louis Wire-Mill Company, of St. Louis, Mo., against the Consolidated Barb-Wire Company, of Lawrence Kas., to recover the sum of $809.05 upon an account. The defendant answered, admitting substantially the correctness of the account, except that it claimed that the whole amount due the plaintiff had been paid in the manner which we shall hereafter state. A trial was had before the court and a jury, and the verdict and judgment were in favor of the defendant and against the plaintiff; and the plaintiff, as plaintiff in error, brings the case to this court for review.

Only two questions are presented in this court by the plaintiff in error, and they both have reference to the admission of evidence on the trial in the court below. In order to obtain a correct understanding of these questions, it is necessary to obtain a correct understanding of the pleadings in the case and the issues presented by them. The plaintiff in its petition sets forth a claim for wire furnished by the plaintiff to the defendant, amounting in value to $6,425.63, with credits to the amount of $5,616, leaving a balance alleged to be due to the plaintiff to the amount of $809.05. Among the credits given is one designated as a " rebate " on 500 tons of wire at

10 cents for each 100 pounds, amounting to $1,000; and another credit is a "rebate" on 77½ tons of wire at 15 cents per 100 pounds, amounting to $232.50; total rebates allowed, $1,232.50. There is nothing in the petition showing that the wire, or anything else, was furnished upon any written contract or upon any writing. The defendant answered, stating that the rebate upon the whole of the wire furnished by the plaintiff should have been at the rate of 15 cents for each 100 pounds, and therefore that it was entitled to a further rebate on this account of $500 more. The defendant also alleged that there was an overcharge of $12.59 in the account; and also that the Kansas. City Barb-Wire Company, of Kansas City, Mo., was entitled to a similar rebate of 15 cents for each 100 pounds on 300 tons of wire purchased at the same time by that company of the plaintiff, amounting to the sum of $900, of which amount the sum of $600 had been paid, leaving a balance of $300 due and unpaid, except another credit of $3.54; and that the remainder of the claim, to wit, $296.46, was still due and unpaid, and that it had been assigned to the defendant by the Kansas City Barb-Wire Company, and that the defendant then owned the same and was entitled to recover the amount thereof. It will be seen that the whole of the defendant's claim amounts to $809.05, just the amount of plaintiff's claim. There was nothing stated in the defendant's answer showing that the contract between the plaintiff and the defendant, or between the plaintiff and the Kansas City Barb-Wire Company, was in writing. The plaintiff in reply to this answer filed a general denial. Upon the trial the defendant assumed the burden of proof, and introduced its evidence first. It introduced Albert Henley as a witness, and it was shown by his testimony that he was the secretary, treasurer and general manager of the defendant, and that he was also the president and agent of the Kansas City Barb-Wire Company, and that he acted for both; and that he made the contracts upon which all the wire was furnished by the plaintiff to both the Lawrence company and the Kansas

City company. It was disclosed by his testimony, however, that the contracts were in writing, and they read as follows:

"ST. LOUIS, December 12, 1885.

"*St. Louis Wire-Mill Co., St. Louis, Mo.*

"Please enter our order for 500 tons of wire, as follows:

| | |
|---|---|
| 320 tons No. 12, annealed............................................ | $2 90 |
| 80 tons No. 13½, barbing........................................... | 3 15 |
| 40 tons No. 12, galvanized......................................... | 3 65 |
| 10 tons No. 13½, galvanized....................................... | 3 90 |
| 32 tons No. 9, annealed............................................ | 2 70 |
| 8 tons No. 13, barbing............................................. | 3 15 |
| 8 tons No. 9, galvanized.......................................... | 3 45 |
| 2 tons No. 13, galvanized barbing............................... | 3 90 |

"Deliveries to be made during February, March, and April, 1886, in about equal amounts in each month; terms cash. Draft with bill lading, less 2 per cent.

CONSOLIDATED BARB-WIRE CO.,

By A. HENLEY, *Sec'y.*"

"ST. LOUIS, December 12, 1885.

"*St. Louis Wire-Mill Co., St. Louis, Mo.*

"GENTLEMEN: Please enter our order for 300 tons wire, as follows:

| | |
|---|---|
| 160 tons No. 12, annealed......................................... | $2 90 |
| 40 tons No. 13, barbing........................................... | 3 15 |
| 32 tons No. 9, annealed............................................ | 2 70 |
| 8 tons No. 13, barbing............................................. | 3 15 |
| 8 tons No. 9, galvanized.......................................... | 3 45 |
| 2 tons No. 13, galvanized barbing............................... | 3 90 |
| 40 tons No. 12, galvanized......................................... | 3 65 |
| 10 tons No. 13, galvanized barbing.............................. | 3 90 |

"Delivery to be made during December, 1885, and January, February, March, and April, 1886. Terms cash with bill lading, less 2 per cent.

KANSAS CITY BARB-WIRE CO.,

E. L. BRUCE, *Manager.*"

It is also shown by the testimony of this witness, Mr. Henley, that he procured E. L. Bruce to sign the Kansas City company's contract; and it was then shown by his testimony, over the objections and exceptions of the defendant, that at the time when these contracts were made it was agreed between the parties in parol that there should be a rebate from the prices mentioned in the contracts of 15 cents on each 100

pounds of all the wire furnished by the plaintiff to both the
Lawrence and the Kansas City companies; and whether this
evidence is competent or not is the first and principal ques-
tion presented to this court.   As before stated, the plaintiff
allowed a rebate of 15 cents on each 100 pounds on a portion
of the wire furnished to the Lawrence company, and allowed
a rebate of 10 cents on each 100 pounds on all the remainder
of the wire furnished to the Lawrence and the Kansas City
companies; and the dispute now is, whether there should be a
further rebate of five cents on each 100 pounds of the wire
furnished to the two companies, upon which a rebate of only
10 cents had previously been allowed, so as to make the en-
tire rebate at the rate of 15 cents on each 100 pounds of all
the wire furnished.   The whole amount of the rebate allowed
was as follows: To the Lawrence company, on 500 tons of
wire, at 10 cents, $1,000; on 77½ tons, at 15 cents, $232.50;
and to the Kansas City company, on 300 tons of wire, at 10
cents, $600; total rebate allowed, $1,832.50.   And the de-
fendant claims that a further rebate should be allowed, as fol-
lows: To the Lawrence company, on 500 tons of wire, five
cents more on each 100 pounds, $500; to the Kansas City
company, on 300 tons, five cents more on each 100 pounds,
$300; total additional rebate claimed by the defendant, $800.
The legal question, however, presented by the plaintiff's ob-
jection to the foregoing evidence is not whether the defend-
ant should be allowed a rebate of five cents more on each 100
pounds, but it is whether the defendant could introduce any
evidence showing that any parol contract was made authoriz-
ing or requiring any rebate in any amount to be allowed or
paid.   The plaintiff claims that, as the contracts between the
parties appear to be in writing and are signed by the parties
to be charged, no parol evidence could be introduced that
would contradict or vary the terms of the written contracts
in the slightest particular; and it further claims that to show
that any rebate in any amount was to be allowed would con-
tradict and vary the terms of the written contracts.

Under the evidence introduced in the case, and the findings

of the jury and the decision of the trial court, it must now be held that the Lawrence and the Kansas City companies did in fact sign and execute the above writings, which are called contracts, and also that they, together with the plaintiff, did in fact at the same time enter into a parol contract that a rebate of 15 cents on each 100 pounds of the wire, to be subsequently furnished by the plaintiff to the Lawrence and Kansas City companies, should be allowed. But the question then arises, why was not the entire contract or the real contract between the parties put in writing? Why did not the writings mention the rebate, or fix the prices of the wire at just what they would have been after deducting the rebate, to wit, a rebate of $3 on each ton of wire? The reason for this, as shown by the evidence, is, that the plaintiff had entered into a combination with other manufacturers of wire, under heavy penalties, not to sell wire for rates less than those mentioned in the foregoing writings. Henley represented and acted for the Lawrence and Kansas City companies at the time when the contracts were made and the above writings were signed, and the plaintiff was represented by William Edenborn, its president and agent, and C. F. Heintz, its vice-president, secretary, and agent; and Henley testified on the trial, among other things, as follows:

"Fifteen cents per 100 pounds. They asked us not to put it in writing, and they wouldn't put it in writing; and they asked us not to say anything about it—not even to have any correspondence about it, . . . because they were under a penalty. They had to pay a certain amount as a fine if it was shown that they had made a rebate below the full pool price. . . . Mr. Edenborn stated that, by reason of certain arrangements they had entered into with other manufacturers of wire, they couldn't put on their books only a certain price, and they wouldn't enter into any contract, but they would give us 15 cents rebate as we were getting before; he didn't see why we shouldn't have it the same as before."

Mr. Henley also testified that the combination or pool prices were those mentioned in the foregoing writings, and were $3 per ton or 15 cents per 100 pounds more than his companies

were to pay. We shall decide this case upon the theory that the foregoing writings were not the real contracts between the parties, but that the parol contracts entered into between the parties through their agents, Henley and Bruce on the one side, and Edenborn and Heintz on the other side, were their real contracts; and that none of the parties expected or intended to be governed by the writings as to prices, but all expected and intended to be governed by the parol contracts; that the prices fixed in the writings were intended to be used principally if not entirely for the purpose of deceiving the other members of the combination of wire manufacturers, of which combination the plaintiff was also a member. We shall also decide this case upon the theory that it is always admissible to prove an independent parol agreement made contemporaneously with a written contract. (*Babcock v. Deford*, 14 Kas. 408; *Weeks v. Medler*, 20 id. 57; *McNamara v. Culver*, 22 id. 661, 670, and cases there cited; *Dodge v. Oatis*, 27 id. 762.) But that "proof of a contemporaneous parol agreement is inadmissible to alter or contradict a contract in writing." (*Hopkins v. St. L. & S. F. Rly. Co.*, 29 Kas. 544; *Cornell v. St. L. K. & A. Rly. Co.*, 25 id. 613; *Miller v. Edgerton*, 38 id. 36; *Windmill Co. v. Piercy*, 41 id. 763.) We shall also decide this case upon the theory that combinations of the kind entered into between the wire manufacturers in this case to fix the prices of wire above the real value thereof are against public policy, illegal, and not enforceable in courts of justice." (Greenh., Pub. Pol., 642–645, and cases there cited; *C. C. C. & I. Rld. Co. v. Closser*, Ind., 45 Am. & Eng. Rld. Cases, 275.)

There is no pretense in the present case that the wire was worth the combination prices, or that it was worth more than the prices fixed by the parol contracts. We think the real question in the present case is as follows: Where a parol contract for the purchase of goods is made between the parties, but at the same time an instrument in writing purporting to be the contract, but which as to price was never intended by the parties to be the contract, is signed by the purchaser, and

such writing is made to differ as to prices from the real contract because of an illegal and existing combination previously entered into on the part of the seller with other dealers in the same kind of goods to enhance the prices of that kind of goods in the market above their real value, can the writing be enforced as to the prices therein mentioned by the seller against the other party and as against the real contract of the parties, although such real contract exists only in parol? This question must be answered in the negative. To answer otherwise would be to hold that the plaintiff might recover an amount of money vastly in excess of the real value of the property it sold, in violation of a lawful parol contract, and in furtherance of an unlawful combination between itself and others to inflate the prices of such property vastly beyond its true value.

1. Written instrument, differing from parol contract —enforcement.

The next question is, whether the court erred, or not, in admitting proof on the part of the defendant of the declarations and statements of Edenborn after the aforesaid contracts were completed, as to what their terms were. There can certainly be no error in this. Edenborn was the president and agent of the plaintiff. He was its principal agent in making the contracts, and these statements were made pending an attempted settlement between the parties with reference thereto. (*Water Power Co. v. Brown*, 23 Kas. 677, 692; *C. C. C. & I. Rld. Co. v. Closser*, supra.) Of course, Edenborn's statements would be competent only where parol evidence would be competent.

2. Agent's statement—evidence.

The judgment of the court below will be affirmed.

All the Justices concurring.