THE SPRINGFIELD FIRE AND MARINE INSURANCE
COMPANY v. THOMAS J. PAYNE *et al.*

No. 8802.

1. FIRE INSURANCE; *written agreement for appraisement of loss
best evidence of intention of parties.*   In the absence of fraud
or mistake the written agreement of the assured and several in-
surers for the appraisement of a fire loss is the best evidence of
the intent of the parties in entering into it.

2. ――――― *opportunity not afforded for furnishing information
as to value of property destroyed, award of appraisers not
binding.*   For the purpose of testing the validity of an award of

appraisers of a fire loss, it is improper to submit to the jury whether the appraisers were in possession of the facts necessary to an intelligent conclusion, or whether they took into consideration all the items of the loss covered by the policy. Such an award is valid and binding if the proceeding is honestly and fairly conducted; but in the case of destroyed property, which an appraiser had never seen, fairness would require that he be informed by evidence of some sort (not necessarily under oath) as to the character and value of the property; and unless an opportunity is afforded to impart such information the award will not be binding.

3. OPINION EVIDENCE — *non-expert witness competent as to value of building.* Evidence of the cost of a building is not usually evidence of its value at a particular time; but witnesses who are not architects, builders, or contractors may be allowed to state their opinions as to the worth of a building from a general knowledge of it without being able to estimate the value of any of the materials entering into its construction; such inability affecting the weight, but not the competency of the testimony.

4. AWARD OF APPRAISERS — *burden on challenging party to show invalid.* Although a submission to appraisers may not be a condition precedent to the commencement of an action, for the reason that neither party made a written demand therefor, yet, when an appraisement is agreed upon, the parties are bound by the award unless the same is invalid; and the burden of proof in that respect rests upon the party who challenges it.

*Error from Wyandotte District Court.*

*Hon. Henry L. Alden, Judge.*

REVERSED AND REMANDED.    OPINION FILED OCTOBER 10, 1896.

IN 1887, Thomas J. Payne commenced, and, in 1889, completed, the erection of a fine dwelling house at Argentine. On November 8, 1888, the plaintiff in error issued a policy of fire insurance thereon for the sum of $4,000, to run for three years. Policies were issued by three other companies aggregating $15,000. The house was destroyed by fire about 2 o'clock on Sunday morning, May 3, 1891. Within a few days after the fire, the adjusters of the several companies, or some of them, had a conference with Payne and his at-

torney at the Coates House in Kansas City, Missouri, in relation to the loss ; but the evidence is quite conflicting as to what occurred there.    The policy of the plaintiff in error contained the following clauses :

"The amount of sound value and the loss or damage shall be determined by agreement between the Company and the assured.   But if at any time, differences shall arise touching any loss or damage, every such difference shall, at the written request of either party, be submitted at equal expense of the parties to competent, expert and impartial persons (not interested in the loss as creditors or otherwise nor related to the assured or claimants), one to be chosen by each party, and the two so chosen, in case of their disagreement, shall select a third to act with them ; and the award in writing, under oath, of any two of them, shall be binding on the parties as to the amount of such loss or damage, but shall not decide the legal liability of the Company under this policy,   .   .   . and until the    .   .   .    award had, the loss shall not be payable."

"No suit or action against this Company for the recovery of any claim by virtue of this policy shall be sustainable in any court of law or chancery until after an award shall have been obtained fixing the amount of such claim in the manner above provided."

Payne testified that the adjusters made no claim that his loss was not equal to the amount of the policies, but they represented that it could not be paid until after an appraisal thereof, which was a requisite formality to payment without suit.    The testimony of the adjusters was to the effect that they disputed the amount of the loss and claimed that it was much less than the sum of the policies ; and that they proposed the selection of appraisers, as provided by the policies, to fix the amount of the loss.    Nothing was then agreed upon, but the attorney for Payne said that he would make proofs of the loss.    On or about

June 17, 1891, however, Payne and the several agents and adjusters of the Insurance Companies signed a written agreement for the appointment of P. B. Messenger and S. G. Gribi to appraise the loss, and in case of disagreement the said appraisers to select a third to act with them in matters of difference only; the award of said appraisers, or of any two of them, made in writing in accordance with the agreement to be binding upon both parties; it being stated that the appraisement was for the purpose of ascertaining and fixing the amount of said loss and damage, and not to determine, waive or invalidate any other right or rights of either party; that in determining the loss and damage the appraisers were to make an estimate of the total cost of replacing or repairing the property, or the actual cash value thereof at or immediately preceding the time of the fire; and that in case of depreciation of the property from use, age, condition, location, or otherwise, a proper deduction should be made therefor. Messenger and Gribi were sworn as appraisers on the same day; and on June 20, 1891, they selected J. F. Meyer to act as a third appraiser, to settle matters of difference, in compliance with the agreement. The evidence tends to show that the only matter of difference was as to a gas machine; and the principal question as to that was whether it was covered by the policies or not. It was conceded on the trial that this machine was not covered by the policies. Meyer was sworn as an appraiser on the day of his appointment, and on the same day he and Gribi signed a written appraisement of the loss, fixing it at $11,428.51; but Messenger did not sign it. On June 26, 1891, Payne made written proofs of his loss giving the items thereof aggregating $23,689.90. These proofs of loss were soon returned to Payne, who

claims that no reasons were assigned for such return ; while the companies claim that they did assign specific reasons therefor and requested their correction.

Payne was permitted to testify, over the objection of the Insurance Company, that the house cost him about $25,000 ; and other witnesses, not architects, builders, nor contractors, were allowed to state their opinions as to the value of the house from a general knowledge of it without estimating the value of any of the materials entering into its construction.

The essential parts of instructions four and five, given by the Court and excepted to by the Insurance Company, read as follows :

"If you find from the evidence that said plaintiff made and entered into such an agreement for the purpose of submitting questions of difference which had arisen between said plaintiff and defendant touching said loss or damages sustained by plaintiff to the persons therein mentioned, for determination, their award to be final and binding upon said plaintiff and defendant as to such loss and the amount of damages so ascertained, and that said agreement was so entered into by the plaintiff of his own accord, knowing the purpose and effect thereof and not by reason of false representations and fraud, as alleged by said plaintiff in his reply as hereinbefore set out, and that said appraisers in making such award thereunder, took into consideration all the items of the loss covered by said policy, and were in possession of the facts necessary for them to arrive at an intelligent conclusion concerning the matters referred to them for determination, then I instruct you that said agreement and the award made and signed by the said J. F. Meyer and S. G. Gribi, are binding upon said plaintiff and his recovery herein will be limited to the amount of such award."

"If, however, you find from the evidence that said agreement to submit the questions of such loss and the amount of damages sustained by the plaintiff to said persons for determination and arbitration, was

not made and entered into by said plaintiff of his own accord, knowing the purpose and effect thereof, but that said plaintiff was induced to sign the same by reason of false representations and fraud made to, or practiced upon him, by said defendant, or its agents, or representatives, as alleged in said plaintiff's reply as hereinbefore set out, or that said appraisers making such award made and determined the same without being in possession of the facts necessary for them to arrive at an intelligent conclusion concerning the matters referred to them, for determination, and without giving an opportunity for such facts to be presented to them, and that said appraisers did not take into consideration all the items of the loss covered by said policy, as in said reply alleged, then I instruct you that said agreement and award are not binding upon said plaintiff; and you will then determine from the evidence, the amount of loss or damage to said dwelling house sustained by said plaintiff from said fire, said loss or damage to be estimated according to the actual cash value of the property at the time of said fire."

A verdict was returned in favor of Payne, April 15, 1892, for $4,158.66, and answers were made to certain particular questions of fact. As to the execution of the agreement to appraise, the jury found that Payne examined it, took it to his attorneys, returned to the office of the insurance agent and requested some alterations therein, and knew the contents thereof and its purpose before it was signed; but in answer to other questions the jury found that he did not understand the nature and character of the agreement, and that false representations and fraudulent statements were made whereby he was induced to sign the same. The jury further found that the parties did not differ as to the amount of the plaintiff's loss before the agreement was signed; that Gribi was employed by the Insurance Companies previous to signing the contract;

that Gribi and Meyer were incompetent because they were not in possession of all the facts in determining the loss; that Payne did not have a hearing or any opportunity to be heard before the appraisers; and that Payne refused to accept the amount of the award on June 20, 1891.    Other facts appear in the opinion.

*Thos. Bates*, and *Reed & Reed*, for plaintiff in error. *Hale & Fife*, for defendants in error.

MARTIN, C. J.    I.    The question of a difference between the assured and the insurers as to the amount of the loss was scarcely an open one after the execution of the written agreement of June 17, 1891.    That the loss was legitimate does not seem to have been disputed at any time, and the only function that appraisers or arbitrators could perform was to ascertain and fix its amount.    Payne did not testify that the agents and adjusters ever agreed to pay him the full amount of of the policies, to wit, $19,000, although he says they did not question the amount of the loss.    He admits that the subject of the appointment of appraisers was discussed at the Coates House, and this was more than a month before the agreement was signed.    According to the findings of the jury, Payne executed the paper advisedly.    Upon his own testimony we are unable to discover any fraud practiced upon him by the Insurance Companies in order to obtain his signature.    It was plainly stated in the writing that the appraisement was ''for the purpose of ascertaining and fixing the amount of said loss and damage,'' and that '' the award of said appraisers, or any two of them, made in writing,'' should be binding upon both parties to the agreement.    The writing is the

*1. Agreement to appraise — best evidence.*

best evidence of the intent of the parties in appointing appraisers, and, there being no evidence of fraud ·or mistake, Payne should not be heard to contradict what is therein so clearly expressed. *Hopkins v. St. L. & S. F. Rly. Co.*, 29 Kan. 544, 550 ; *Smith v. Deere*, 48 id. 416 ; *Getto v. Binkert*, 55 id. 617, 620, and cases ·cited.

II. The agreement of June 17, 1891, designated P. B. Messenger and S. G. Gribi as appraisers. Messenger had been named by Payne, and Gribi by the Insurance Companies. Messenger was a carpenter and builder who had worked on Payne's house, part of the time as foreman, and he was entirely familiar with the materials and workmanship entering into its construction. Gribi was a contractor and builder residing at Wichita, and had on ·several previous occasions acted as ·an appraiser of fire losses by the appointment of insurance companies. The evidence tends to show that Gribi was in Kansas City on business before the agreement was ·signed, and that he consented to serve as an appraiser. Gribi and Messenger went to Argentine on the day of their appointment and measured the foundation walls ; the superstructure of wood having burned leaving little else to indicate the size and ·character of the building. A rain coming up, they went to the place where Payne was residing, and he .gave them a photograph of the house. From the measurements and the photograph Messenger and ·Gribi drew a rough plan or diagram of the house. Gribi testified that Payne then and there gave a very :full description of the house with all its materials and workmanship, but this was fully denied by Payne. It is not claimed that Payne had any hearing after

2. Award of appraisers not binding when no information given as to value.

that day or any notice that evidence would be heard as to the character or the value of the building. The appraisers obtained the bill of the Hopkins Planing Mill Company, which included the greater part of the mahogany, cherry, bird's-eye maple and butternut finishing lumber, together with doors of like character, and this bill with the measurements, the phograph and the plan made therefrom appear to have been the sources of information upon which Gribi acted with the knowledge, if any, derived from Payne, for he did not testify that he obtained any *data* from Messenger. The latter had the same sources of information, and also the previous knowledge of the house derived from his personal familiarity with it. Meyer, although appointed by the other appraisers because of their difference as to the gas machine, seems to have gone all over the calculations and estimates, but it does not appear that he obtained any facts from Payne or from any other source familiar with the building. Messenger died before the trial. His deposition was taken, but neither party offered it in evidence.

An appraisement of existing property is usually made upon actual view, and without the aid of other evidence ; and, in the case of appraisers entirely familiar with property afterward destroyed, they might make an intelligent estimate upon their former knowledge ; but this is not so as to appraisers who have never seen the property. In such case the estimate must be as to property which was, but is not, and all knowledge of it must be derived from evidence of some sort not necessarily under oath. The measurements, the photograph and the plat made therefrom, together with the planing-mill bill, would no doubt greatly aid Gribi in making an estimate ; but if he ob-

tained no information from Payne, or any other person, it could hardly be claimed that his estimate would be an intelligent one.   Messenger was well informed respecting the building, and was, perhaps, competent to make an estimate with the aids before indicated ; but he did not sign the award.   If he agreed to the amount thereof, however, then it may fairly be considered his by reason of the signature of the third appraiser in the selection of whom he joined, for, by the terms of the agreement, the award was sufficient if signed by any two of the appraisers.

The rule laid down by the Court was too strict in allowing the jury to pass upon the question whether or not the appraisers were in possession of the facts necessary for them to arrive at an intelligent conclusion, and in declaring that, if the appraisers did not take into consideration all the items of the loss covered by the policy, then the award was not binding upon Payne.   Very few awards could stand the test of so strict a rule.   An award is *prima facie* conclusive between the parties as to all matters submitted to the arbitrators ; *Miller v. Brumbaugh*, 7 Kan. 343, 352 ; *Groat v. Pracht*, 31 id. 656 ; and it will not be set aside for mere irregularities not affecting substantial rights. *Anderson v. Burchett*, 48 Kan. 153.   In *Underhill v. Van Cortlandt*, 2 Johns. Ch. 339, 361, Chancellor KENT said :

"Admitting that there was no corruption or partiality in the arbitrators, (and none is pretended,) and admitting that there was no misconduct in them during the course of the hearing, nor of fraud in the opposite party, (and none is established by proof,) then, I say, the Court cannot inquire into the charge of an over or under valuation, or of the reasonableness or unreasonableness of the award, but it is binding and conclusive.   If every award must be made conforma-

ble to what would have been the judgment of this
Court in the case, it would render arbitrations useless
and vexatious, and a source of great litigation ; for it
very rarely happens that both parties are satisfied.
The decision by arbitration is the decision of a tribu-
nal of the parties' own choice and election.   It is a
popular, cheap, convenient, and domestic mode of
trial, which the courts have always regarded with
liberal indulgence ; they have never exacted from
these unlettered tribunals, this *rusticum forum,* the
observance of technical rule and formality.   They
have only looked to see if the proceedings were hon-
estly and fairly conducted, and if that appeared to be
the case, they have uniformly and universally refused
to interfere with the judgment of the arbitrators.''

See also *Boston Water Power Co. v. Gray,* 6 Metc.
131, 165, and *Hall v. Insurance Co.,* 57 Conn. 105, 117,
and authorities cited.

III.   The policy required the Insurance Company
to make good unto the assured the amount of loss or
damage, to be estimated according to the cash value
of the property at the time of the loss, not exceeding
$4,000.   One method of arriving at such
loss is by estimating the cost of replacing
the building less any depreciation from
use, age, or otherwise ; and the other is by
evidence of the value of the building, at the time of
its destruction, less the value, if any, of the ruins.
If witnesses as to the worth of the building are shown
by cross-examination to have little knowledge upon
the subject, this would be proper matter of argument
to the jury as affecting the weight of their testimony,
but it should not be excluded on that account.   Evi-
dence of the cost of a building, however, can hardly
be said to be evidence of its value at a particular time.
Sometimes, from the necessities of the case, it may be
proper to inquire as to the cost of an article as tend-

3. Non-expert
opinion as to
value com-
petent.

ing to establish its value; but there is no such necessity here, and Payne ought not to have been permitted to testify that the house cost about $25,000.

IV. It does not appear that either party made a written request for submission to appraisers, and, therefore, an appraisement was not a condition precedent to the commencement of an action. *Insurance Co. v. Wilson*, 45 Kan. 250; *Insurance Co. v. Wallace*, 48 id. 400. Yet an appraisement having been agreed upon, Payne is bound by the award unless it is invalid under the principles above stated, and the burden of proof is upon him to show its invalidity. If, however, the award be not sustained, then Payne will be entitled to recover from the Insurance Company the sum of $4,000 and interest thereon at six per cent. per annum from a time 60 days after the proofs of loss were received at Chicago; or so much thereof as shall not exceed four-nineteenths of the total loss, with interest thereon as aforesaid.

4. Burden on challenging party to show award invalid.

The Court did not err in refusing to submit to the jury the particular questions of fact referred to in the brief of plaintiff in error, nor in holding that further proof of loss was waived, nor in any other respect material to the case except as hereinbefore indicated; but, for these errors, the judgment must be reversed and the cause remanded for a new trial.

All the Justices concurring.