Argued 21 April; decided 23 June, 1898.

## STEMMER v. SCOTTISH INSURANCE COMPANY.

[49 Pac. 588; 52 Pac. 498 ]

INSURANCE—LEGALITY OF ARBITRATION.—The valued policy act of this state (Laws 1893, p. 133), which provides that "in case there is a partial destruction of the property insured, no greater amount shall be collected than the damages sustained," does not affect the right of the parties to arbitrate a partial loss, either on a building or on personal property.

MEANING OF WORDS USED IN THE INSURANCE STATUTES.—The words "full amount of such loss," as used in section 3577 of Hill's Annotated Laws, and the expression "damages sustained" found in the fire insurance act of 1893, unquestionably mean indemnity.

IDEM.—The words "other causes" in the report of appraisers to determine the loss under a policy of insurance stating that they considered the several elements pointed out in the agreement of arbitration which tend to measure the amount of the loss, and "other causes," will, under the maxim *ejusdem generis,* be held to refer to such causes as tend to fix the full amount of the loss, and do not invalidate the award.

WAIVER OF OBJECTION TO ARBITRATOR.—Where a party to an arbitration knows at the time the other party selects its arbitrator that he is a nonresident, a failure to object will be deemed a waiver of that objection.

EXPERIENCE OF ARBITRATOR NO OBJECTION.—The prior service of an arbitrator in a similar capacity does not render him incompetent, or invalidate an award in which he joined, in the absence of evidence showing that he was prejudiced.

CONCLUSIVENESS OF AWARD.—The determination by appraisers appointed by the parties is final and conclusive in the absence of fraud or misconduct on their part, the rule being that an award deliberately and honestly made will not be set aside merely for an excess.

INADEQUACY OF AWARD.—Where there is competent evidence to show that the loss claimed by the insured upon a portion of his property is only about one-third the amount claimed, an award of arbitrators which cuts his entire loss down in about the same proportion will not be set aside on the ground of inadequacy.

REJECTION OF TESTIMONY BY ARBITRATORS.—While it is a general rule that if appraisers exclude material testimony it will be fatal to the award, it is also true that testimony must be offered before it can be rejected; so that, where the insured only announced that he was willing to produce witnesses on a certain point, without actually offering them, it cannot be said that the arbitrators rejected pertinent testimony.

33 OR.—5.

SECRECY OF DELIBERATIONS.—Arbitrators chosen to fix the amount of a fire loss need not reveal their estimate of loss upon the various articles as they fix upon the same, but may defer the giving of such information until the award is made.

MISTAKE OF LAW.—An honest error by arbitrators in applying the rules of evidence does not constitute a valid reason for setting aside the award.

IMPLEMENTS OF TRADE.—Stationery and unfilled glove boxes are not included within the term "All other kinds of implements of trade."

REMEDY AT LAW—JURISDICTION OF EQUITY.—A court of equity, after sustaining an arbitration and award in a suit to set aside the award and recover on the policy, cannot decree a recovery as to items not submitted to arbitration, for there is an adequate remedy at law by an action for their value.

INTEREST ON THE AWARD.—Where an insured sues to set aside an award, he should not be allowed interest until the decree is entered, for, having rejected the award, there was nothing on which to compute interest: *Hawley* v. *Dawson*, 16 Or. 344, and *Pengra* v. *Wheeler*, 24 Or. 532, cited.

ACCEPTING BENEFIT OF DECREE—WAIVER OF RIGHT TO APPEAL.—Pending the hearing of a case on its merits the appellate court will not make an order allowing appellant, without prejudice to his right of appeal, to draw from the clerk of the trial court the money that respondent had deposited there under the decree appealed from, where the acceptance of the money without such an order would have been a waiver of the right to appeal: *Portland Construction Co.* v. *O'Neil*, 24 Or. 54, applied.

From Multnomah : LOYAL B. STEARNS, Judge.

For appellant there was a brief and an oral argument by *Messrs. John W. Whalley* and *Thomas O'Day*.

For respondents there was a brief over the name of *Dolph, Mallory & Simon*, with an oral argument by *Mr. Joseph Simon*.

This is a suit by Solomon Stemmer against the Scottish Union and National Insurance Company and others, to set aside the awards of arbitrators, and to recover upon certain policies of insurance the amount of loss claimed to have been sustained by fire. The facts are : That plaintiff was the owner of and operated a glove factory at Portland, Oregon, and kept therein a stock of gloves, skins, leather and other material and goods, besides tools and machinery used in manufacturing gloves. On October 14, 1895, a fire occurred in said factory,

resulting in damage to the goods, machinery, etc., at which time insurance policies, issued by the following companies to plaintiff, were in force thereon, viz. :   The Prussian National Insurance Company for $4,250, covering the following property :   $525 on fifteen assorted machines ; $100 on empty boxes ; and $3,625 on a stock of gloves, finished and unfinished, and on material for finishing the same, including a stock of skins, whips and lashes and other material used in a glove factory ; The Scottish Union and National Insurance Company for $3,300 as follows :   $2,000 on a stock of skins, gloves, and materials for manufacturing the same ; $50 on stationery ; $50 on scales, laying-off tools, button machines and eyelet machines ; $200 on press and tools belonging thereto ; $1,000 on cutting dies, blocks, and other implements of trade ; The Magdeburg Fire Insurance Company for $2,000 on stock of skins and gloves, and on material for manufacturing the same ; and the Western Fire Insurance Company for $2,200 as follows :   $2,100 on the stock of skins and gloves and materials for manufacturing same, and $100 on fixtures.   Each policy permitted concurrent insurance, and also contained a provision to the effect that, in the event of disagreement as to the amount of loss in case of fire, the same should be ascertained by two competent and disinterested appraisers, plaintiff and the insurance company each to appoint one, and the persons so chosen to select a competent and disinterested umpire, after which the appraisers were required to estimate and appraise the loss, stating separately sound value and damage, and, failing to agree, they were to submit their differences to the umpire, and the award in writing of any two was to determine the amount of such loss.   The insurance adjusters representing the several companies being unable to agree with plaintiff as to the amount of his loss, entered into an

agreement with him by which they selected one Godfrey
Fisher, of San Francisco, and plaintiff chose Isaac L.
White, of Portland, to appraise the damage on the stock
of skins and gloves, and the material for manufacturing
the same, and also the stock of whips and lashes, and
the persons so selected appointed one W. P. Olds um-
pire ; and, in like manner, W. B. Honeyman and A.
Gaudron were appointed to appraise the damage to the
tools and machinery, and the latter selected one Bert
Hicks as umpire.   In pursuance of their appointment,
Fisher and White appraised the damage to the stock of
skins, gloves, etc., at $3,213, and Honeyman and Gau-
dron estimated the damage to the tools, machinery, etc.,
at $528, and the awards having been made in writing,
plaintiff brings this suit to set them aside, alleging that
Fisher was not an impartial or disinterested appraiser,
but was, at the time of his appointment, in the employ
of the defendant companies, and was so employed with
the understanding that he would appraise and make the
losses as light as possible, which fact was at that time
unknown to plaintiff ; that plaintiff, desiring to procure
as an appraiser some person who had experience in the
glove business and was acquainted with the value of
gloves and of the stock from which they are manufac-
tured, attempted to select either Abraham Dryer, T. Dit-
tenhoefer, Julius R. Haas or Frank Deitch, but defend-
ants refused to permit him to appoint either of them,
and urged him to appoint White, stating that, if he did
not do so, they would deny all liability, but if White was
appointed they would consent to the arbitration, and
would pay the amount awarded ; that neither Fisher nor
White was familiar with or knew the value of the goods
or materials insured under said policies ; and plaintiff
having discovered, after their appointment, that they
were not experts in this line, appeared before them and

offered proof of the true value of such goods and materials, and also tendered the evidence of competent witnesses as to such value and damages, but the appraisers refused to hear said testimony, or permit plaintiff to show the extent of his loss or damage, which is alleged to be $11,741.67, on the following goods : $5,794.17 on manufactured gloves; $1,050.59 on gloves in process of manufacture; $290.88 on materials used in manufacturing gloves, $72 on whips and lashes, $3,376.28 on a stock of skins, $1,085.25 on machines, tools, etc., $395 on sewing machines and $272 on stationery, empty boxes, etc., — which sums were included in plaintiff's proof of loss, and are sought to be recovered in this suit.

The cause being at issue, a trial was had, and the court found, from the evidence taken before it, the facts, in substance, as hereinbefore stated ; and also " that said appraisement so demanded and entered into by plaintiff and defendants was honestly, fairly and deliberately entered into by plaintiff, and, in the selection of Isaac L. White as appraiser, said plaintiff was in no way overreached, deceived or in any manner imposed upon, but that said Isaac L. White was the voluntary choice of plaintiff as an appraiser, and said Isaac L. White acted in said appraisement, and the award made, fairly, honestly and according to his best judgment; that there was no fraud, bad faith or deception in the appraisement made by the said appraisers, or in the award by them, and said appraisement and award was regularly, fairly and honestly conducted and made, and is binding upon the parties thereto." Similar findings having been made as to the award of Gaudron and Honeyman, the court apportioned the award against the insurance companies as follows : To the Scottish Union and National Insurance Company, $723.50 ; the Prussian National Insurance Company, $1,564.95 ; the Magdeburg Fire In-

surance Company, $659.35 ; and the Westchester Fire
Insurance Company, $793.20 ; and ordered that neither
party recover costs,—from which decree plaintiff appeals.

AFFIRMED.

Mr. CHIEF JUSTICE MOORE, after making the forego-
ing statement, delivered the opinion of the court.

It is contended by plaintiff's counsel that their client,
having agreed upon a submission of differences to arbi-
tration, sought to select some reputable and competent
person to estimate the amount of his loss, and to that
end proposed the names of several individuals possessing
these qualifications ; but that E. P. Farnsworth and A.
J. Wetzler, insurance adjusters representing the defend-
ant companies, after objecting to each name so proposed,
suggested the name of Isaac L. White, claiming that he
was well qualified for the position, and stating that, if
plaintiff did not accept White as his appraiser, they
would deny all liability ; and that, in view of this threat,
their client, against his wish, was compelled to accept
White, and that such conduct on the part of defendants'
agents rendered the award void. It is impossible to
reconcile the testimony on this branch of the case.
Plaintiff and one of his employees named J. B. McClosky
testified that Farnsworth and Wetzler made these state-
ments, and that the threat was uttered in a " stage whis-
per." But Farnsworth and Wetzler each deny the state-
ments entirely, except that the former admits that they
objected to the name of one person proposed by plaintiff,
because the person so suggested was doing business with,
and furnishing material to, plaintiff, for which reason
they considered him not impartial. Farnsworth says
that plaintiff, after finding that he could not obtain other
persons whom he desired, on account of business engage-

ments, voluntarily suggested the name of Isaac L. White, with whom, at that time, they were unacquainted, but, having heard that he possessed an excellent reputation as an upright citizen, no objection was made to him. The testimony of this witness is corroborated by that of William Church, Jr., who was present when the appraisers were appointed, and says that White's name was proposed by Stemmer. The trial court had the advantage of seeing the witnesses, hearing them testify, and noting their manner and bearing on the stand, for which reason it was in a better position to judge of their credibility than it is possible for this court to do from an inspection of the · record; and, having found against plaintiff on this issue, we are impelled to adopt its conclusions in this respect.

It is maintained that the agreement entered into by the parties for the submission to appraisers, and the method adopted by the persons so selected in appraising and determining the amount of plaintiff's loss by the fire, were in contravention of the public policy adopted by the state, and hence the awards should be set aside. In thus contending, counsel proceeds upon the theory that the act of the legislative assembly of February 21, 1893 ( Laws 1893, p. 133 ),* operated to take insurance on buildings

*Note.—Section 3577, Hill's Ann. Laws (passed February 24, 1887), is as follows: "Any fire insurance company doing business within the state shall, in case of a loss by fire, pay to the insured the full amount of the policy, or the amount for what he or she is insured; *provided,* that the property destroyed be worth at the time of the loss the full amount for which it was insured. In case the property destroyed is not worth the full amount for which it was insured, then, and in such case, the said company shall pay the insured the full value of the property insured. In case of partial loss, then, and in such case, the said company shall pay to the insured the full amount of such loss; *provided,* the amount of the policy of such insured be sufficient to cover such loss." Act of February 21, 1893: "The amount of insurance written in a policy of insurance on all buildings insured after the passage of this act shall be taken and deemed the true value of the property at the time of the loss, and the amount of the loss sustained, and shall be the measure of damage, unless the insurance was procured by the fraud of the insured, or the loss was caused by the criminal act of the assured. It shall be lawful for any insurance company liable to pay losses occasioned by fire to

out of the provisions of section 3577, Hill's Ann. Laws,*
and to render insurance on personal property a valued
policy.   Assuming, without deciding, that an insurance
company and the insured could not enter into a contract
inhibited by the alleged public policy, and that the act
of 1893 so amended section 3577 of our statutes as to
bring about the result insisted upon, do the agreements
to submit the question of the amount of loss to apprais-
ers violate any public policy?  The agreement for sub-
mission required the appraisers to estimate, at the true
cash value, the loss or damage by fire, and, in doing so,
" to take into consideration the age, condition and loca-
tion of said property previous to the fire, and also the
value of the material, or any portion of said property,
saved ; and, after making an estimate of the cost of re-
pairing or replacing said property, a proper deduction
shall be made by them for the difference between the
value of new or replaced property and the property in-
sured and destroyed or damaged.   Said appraisers are
hereby directed to exclude from the amount of damage
any sum for previous depreciation from age, location,
ordinary use, or any cause whatever, and simply to ar-
rive at the damage actually caused by said fire."   The
appraisers, in pursuance of their appointment, reported
as follows :   " Having carefully and accurately estimated
and appraised the loss and damage by fire of October 14,
1895, to the property of S. Stemmer, agreeably to the
foregoing appointment, we hereby report that, after hav-
ing taken into consideration the age, condition and lo-
cation of the property previous to the fire, and making
proper deductions for the materials and portions of the

rebuild any structure or building wholly or partially destroyed of the same style
and materials and of equal value with the one so wholly or partially destroyed,
but they shall make their election so to do within thirty days after notice of loss.
In case there is a partial destruction of the property insured, no greater amount
shall be collected than the damages sustained."—REPORTER.

property saved, also making deductions for depreciation and other causes, we have appraised and determined the damage to be as per schedule hereto annexed and made a part hereof." The act of 1893 provides that "in case there is a partial destruction of the property insured, no greater amount shall be collected than the damages sustained." It will thus be seen that, if the act in question converted an insurance on personal property into a valued policy, the amount expressed therein is not payable except in case of total loss.

The total value of the property covered by the several policies, at the time of the fire, is claimed by plaintiff in his proof of loss to have been $19,623.31, while it will be remembered that the aggregate amount of the several policies is $11,750, and the amount of loss claimed to have been sustained is $11,741.67 only; from which it will be observed that the loss is only partial, in which case it was incumbent upon the insurance companies, under the provisions of section 3577, to pay "the full amount of such loss," and, under the act of 1893, "no greater amount shall be collected than the damages sustained." These terms, "full amount of such loss," etc., undoubtedly mean indemnity (Ostrander on Fire Insurance, § 156; 1 Wood on Fire Insurance, § 41), to arrive at which must necessarily involve a consideration of several questions. The agreement for submission was tantamount to written instructions, given by the interested parties to the appraisers, to guide them in ascertaining the amount of plaintiff's loss. True, the appraisers, following these instructions, reported that they considered the several elements which tended to measure the amount of the loss and "other causes," but this phrase must be used in the light of the submission, which instructed the appraisers simply "to arrive at the damage actually caused by said fire"; and hence "other causes" must be

understood to mean, under the maxim of "*ejusdem generis,*" such causes as might tend to fix the full amount of such loss, and to aid them in making an award equivalent to the damages sustained. We do not think the agreement for submission, or the award made in pursuance thereof, violate any public policy which the state seeks to promote.

It is insisted that the agents of said insurance companies falsely represented to plaintiff that Godfrey Fisher, who resided in California, was impartial, and possessed such qualifications as rendered him competent, under the terms of the policies, to act as an appraiser of losses sustained by fire, and that plaintiff, being unacquainted with him, had no opportunity to inform himself as to the truth of such representations, and hence relied thereon ; and that Fisher had been frequently employed by insurance companies to appraise their losses, in consequence of which he was not impartial; and that such employment and his nonresidence rendered him ineligible to act as an appraiser. It is undoubtedly true that it was the duty of each party to select an impartial appraiser, but experience teaches that selfishness is ordinarily the mainspring of human conduct, in view of which each party would probably seek to appoint an appraiser who was friendly, at least, to the one who selected him ; thus imposing upon the other party the duty of closely scrutinizing the character, reputation and qualifications of the person so chosen by his adversary : *Fox* v. *Hazelton,* 10 Pick. 275. Plaintiff at the time of Fisher's appointment knew that he resided in California, and, if his residence tended to render him ineligible, a failure to except him must necessarily be deemed a waiver of any objection on that ground : 2 Am. & Eng. Enc. Law (2d ed.), 637 ; Morse, Arb. 100.

It is admitted that Fisher had been appointed by both insurers and insured to appraise losses sustained by fire, and it does not appear that plaintiff was aware of this fact when the appointment was made in the case at bar. But Fisher's prior service as an appraiser ought not necessarily to have rendered him incompetent. If a person so appointed faithfully discharges his duty by carefully considering the issues which have been submitted to him and renders a conscientious award thereon, his experience ought to render him more competent to try similar questions rather than to render him ineligible on account thereof. We are unable to say, from a careful inspection of all the evidence, that Fisher had formed a preconceived opinion on the subject matter of the submission, or that he was biased or prejudiced against either party.

It is maintained that the inadequacy of the award is so gross as to warrant the court in setting it aside. In *Bradshaw* v. *Agricultural Insurance Co.*, 137 N. Y. 137 (32 N. E. 1055), the court having found that an award made by appraisers was $989.61 less than the amount of damage sustained by a fire, and that an appraiser selected by the insurance company, whom it falsely represented to the insured as an impartial person, was not disinterested, set aside the award; but this result must have been reached as a consequence of the prejudice of the appraiser instead of the inadequacy of the award, or, perhaps, the combined elements of prejudice and inadequacy afforded the reason for the decree rendered. If an award is adequate, the assured could not be injured thereby, and hence it would seem that a court of equity would be powerless to set it aside, however prejudiced the appraisers may have been. In the absence of fraud or misconduct on the part of appraisers in the discharge of their duties, their determination is final and conclusive,

the rule being that an award deliberately and honestly made will not be set aside merely for an excess: *Nutter* v. *Taylor*, 78 Me. 424 (6 Atl. 835) ; *Port Huron Railway Co.* v. *Callanan*, 61 Mich. 22 (34 N. W. 678); *Goddard* v. *King*, 40 Minn. 164 (41 N. W. 659); *Ellicott* v. *Coffin*, 106 Mass. 365 ; *Davis* v. *Henry*, 121 Mass. 150 ; *Underhill* v. *Van Cortlandt*, 2 Johns. Ch. *339. The amount of damage claimed to have been sustained by plaintiff is $11,741.67, while the amount awarded by the appraisers, on account thereof, is only $3,741,— a difference of $8,000,— but the disallowance of this sum, though comparatively large, is not alone sufficient to warrant us in setting aside the award when the evidence on which it is based is considered. Plaintiff, in the proof which he submitted to the insurance companies, claimed to have sustained a loss of $1,085.25 on machines, tools, etc., and $395 on sewing machines. These items being considered by the appraisers, A. Gaudion and W. B. Honeyman, they estimated the damage thereto to be but little more than one-third of the amount claimed, towit, $528. The evidence shows that Mr. Honeyman is a manufacturer of, and dealer in, machinery, tools, etc., and as a witness he testified that he was ready and willing to repair and put the machinery, tools, etc., in as good condition as they were at the time of the fire for the amount of damages awarded thereon. The evidence also shows that the witness has had much experience in his line of business. From this award, the amount of which is not seriously controverted by plaintiff, it is evident that the claim of loss on this class of property was very much overestimated. Plaintiff claimed to have lost on the other property covered by the insurance the sum of $10,261.42, according to an estimate, as in the case of the machinery, tools, etc., made by persons selected by himself. The damage to this class of property was esti-

mated by Fisher and White at about one-third of the amount claimed to have been sustained thereon, towit, $3,213; and this being about the same percentage allowed on the claim for machines, tools, etc., by Messrs. Gaudron and Honeyman, it would seem to follow that it is equally correct, and hence the alleged inadequacy of the award is not so gross as to authorize a court of equity to set it aside : *Morris* v. *Ross,* 2 Hen. & M. 408; *Pierce* v. *Perkins,* 17 N. C. 250.

It is claimed that Fisher and White excluded evidence which tended to show the amount of damage sustained, thereby denying to plaintiff a hearing on the merits of the controversy and rendering the award invalid.   The rule is quite general that the exclusion of pertinent and material testimony by the appraisers is usually fatal to the award :   2 Am. & Eng. Enc. Law ( 2d ed.), 655; Morse, Arb. 142; *Mosness* v. *German Insurance Co.,* 50 Minn. 341 ( 52 N. W. 932); *Van Cortlandt* v. *Underhill,* 17 Johns. 405; *Canfield* v. *Watertown Insurance Co.,* 55 Wis. 419 ( 13 N. W. 252); *Citizens' Insurance Co.* v. *Hamilton,* 48 Ill. App. 593; *Hart* v. *Kennedy,* 47 N. J. Eq. 51 ( 20 Atl. 29).   An exception to this rule seems to be that if the persons selected as appraisers possess peculiar skill or knowledge concerning the subject matter, and it appears that the parties to the submission intended to rely upon such skill or knowledge, the appraisers will be justified in refusing to hear evidence ( Morse, Arb. 143; *Hall* v. *Norwalk Insurance Co.,* 57 Conn. 105, 17 Alt. 356); but, however this may be, it is admitted that neither of said appraisers possessed any peculiar knowledge of skins or other material used in manufacturing gloves, so that, if they be regarded in the light of ordinary arbitrators and rejected material evidence to plaintiff's prejudice, it necessarily follows that the award should be set aside.   The evidence tends to

show that plaintiff was present when Fisher and White examined the stock and manufactured goods that had been injured by the fire, but he was not permitted to volunteer any information concerning his loss, his answers being confined to such questions as were propounded to him by the appraisers. He was not permitted to know what amount of damage the appraisers had placed upon any of the stock or goods until the award was made, whereupon he stated to the appraisers that he would not accept the amount awarded, and notified them that he intended to offer further testimony. The appraisers called one Mathiesen, a competent witness, who estimated the value of the skins used in the manufacture of gloves at from twenty-five to one hundred per cent. more than the invoice prices ; but plaintiff claims that they relied upon their own knowledge as to the damage to such material, and not being experts they did not know the effect of heat upon leather and skins and refused to hear any evidence which would have enlightened them on the subject, and consequently did not make a reasonable allowance on account thereof. Stemmer, referring to what he said to Fisher and White when they were appraising this material, testified as follows : '' I told them time and time again I was willing to bring in any information from people that were capable and understood that class of goods to give them information '' ; to which he says the appraisers replied that : '' If we need to we will get them ourselves.'' Godfrey Fisher, one of the appraisers, in his deposition, states that : '' Mr. Stemmer never to my knowledge offered to produce any evidence which we rejected.'' While plaintiff may have been willing to have brought in persons who would have testified concerning the amount of his damage, he did not produce a single witness, and such being the case it cannot be said that the appraisers

rejected material testimony.  Testimony must be offered before it can be rejected, and a statement of a party's willingness to bring in witnesses is not a production of testimony.  As we understand it, the appraisers simply refused to permit plaintiff to participate in their delibera- tions when making a memorandum of the losses upon which the award was based.  In other words, they declined to listen to the advice of counsel, but we are unable to find from a careful perusal of the testimony that the appraisers rejected any evidence that was offered.

The appraisers used pasteboard cards on which they noted the number and character of the goods examined, and, when they had agreed upon the amount of damage resulting thereto, a memorandum thereof was entered in books kept by each appraiser, without permitting plain- tiff to see or know what was being done.   Plaintiff's counsel complain of this method of keeping the appraise- ment from the knowledge of their client until the award was made, but it is manifest that the course adopted was prudent ;  for, if the interested parties were permitted to examine the work or to understand the deliberation of the appraisers as it was progressing, it is possible that, unless the amount agreed upon tallied with the expecta- tions of the parties, a controversy might ensue which would tend to destroy the free agency of the appraisers and render the award the mere conclusion of the parties.

The evidence also shows that one Charles R. Hallett, immediately after the fire, was employed by the insur- ance companies to guard the damaged property, and was performing that duty when the appraisers arrived ;  and, being called as a witness, he testified that he was in- structed not to permit anyone to enter the building un- less it was satisfactory to Fisher ;  that Stemmer seemed to be trying to give the appraisers information ;  and that

the hardest job he had was to keep Stemmer back; and
that Fisher frequently said to Stemmer: "You keep
back; we don't wish for your services at all." This
testimony is corroborated by that of Fisher, who says:
" Stemmer seemed to be talking once or twice in there,
and I told Mr. White that 'I am doing business with
him, and I certainly don't want anybody else to be look-
ing around here and interrupting our work.'" Fisher,
in assigning a reason for his treatment of Stemmer, says:
"According to the articles of agreement, he waived his
right, and I thought he had no right on the premises."
There is no stipulation in the agreement of submission
by which Stemmer waived his right to be present at the
appraisement of his loss, or to give testimony concerning
the amount of damage he had sustained. But, notwith-
standing Fisher thought Stemmer had no right on the
premises, he was allowed to remain and answered such
questions as were propounded to him touching the value
of his goods. True, Fisher mistook the law applicable
to the case under consideration before the appraisers, but
an honest error in the application of the rules of evidence
does not alone constitute a valid reason for setting aside
an award (*Johnson* v. *Noble*, 38 Am. Dec. 485) ; and, if
the rule were otherwise, Stemmer, by not offering testi-
mony, acquiesced in this erroneous judgment.

It is maintained that certain stationery, envelopes,
boxes, fixtures, etc., which were covered by the insur-
ance and injured by the fire, were not embraced within
the submission or award, and, having been damaged by
the fire to the extent of $272, the court erred in its re-
fusal to decree a recovery of that amount in addition to
the award. The evidence shows that the Prussian Na-
tional Insurance Company of Stettin had in its policy
" $100 on empty boxes," the Scottish Union & National
Insurance Company " $50 on stationery," and the West-

chester Fire Insurance Company "$100 on furniture and fixtures." The submission to Fisher and White contained the following clause: "The property on which loss and damage is to be estimated and appraised is on stock of skins and gloves, manufactured and in process of manufacture, and on materials for manufacturing the same, all while contained in the third floor of the brick building situate on the southeast corner of First and Stark streets, Portland, Oregon; also a stock of whips and lashes on same premises." The submission to Gaudron and Honeyman embraced the following: "The property on which loss and damage is to be estimated and appraised is scales, laying-off tools, button machines and eyelet machines, press and tools belonging thereto, cutting dies, blocks and all other kinds of implements of trade, fifteen assorted machines, furniture and fixtures, all while contained in the third floor of the brick building situate on the southeast corner of First and Stark streets, Portland, Oregon." It will be observed that the submission to Gaudron and Honeyman included "furniture and fixtures," and the evidence shows that the appraisers estimated the damages resulting thereto at $165, which was included in their award, and, such being the case, the question of "stationery and boxes" only remains to be considered.

Plaintiff, in his proof submitted to the defendant companies after the award was made, claimed the following as total loss: "Stationery, $50; empty boxes, $25." But their counsel insist that the damage to the "stationery, boxes, fixtures," etc., was duly considered by the appraisers, and included in the general award, and due compensation made therefor. In *New York Wood-Working Co.* v. *Schnieder*, 119 N. Y. 475 (24 N. E. 4), Mr. Justice GRAY, in commenting upon the extent of an

33 OR.—6.

award, says : "In the absence of some positive proof of
neglect or refusal by the arbitrators to decide any of the
particular matters presented under the submission, the
presumption holds good that their award covers all of
the submission." While it will be presumed that all
matters within an issue which have been submitted to
appraisers have been passed upon by them when the
award is made, it cannot be presumed that the award
includes matters not embraced within the submission : 2
Am. & Eng. Enc. Law (2d ed.), 740; Morse, Arb. 367.   It
clearly appears that the award did not include " station-
ery and boxes," unless these were embraced within the
term " all other kinds of implements of trade." " Imple-
ments " are defined in Anderson's Law Dictionary to be :
" Things necessary to any trade, without which the work
cannot be performed." From this definition it is quite
evident that the work incident to the manufacture of
gloves could be performed without " empty boxes " to
encase such goods, or " stationery " to promote or adver-
tise plaintiff's business ; and, such being the case, we
do not think these items were submitted to or embraced
within the award of the appraisers.

This omission, however, does not authorize a court of
equity, in case the award is upheld, to decree a recovery
on the demand which was not submitted, because for
this the party injured thereby has an adequate remedy
at law : *Bixby* v. *Whitney*, 5 Me. 192 ; *McDonald* v. *Bacon*,
4 Ill. 428 ; *Pritchard* v. *Daly*, 73 Ill. 523.   The rule that
when equity obtains jurisdiction of a cause for one pur-
pose it will retain it until complete justice is adminis-
tered can have no application to the case at bar, for
jurisdiction to set aside an award cannot attach except
for misconduct of the arbitrators or mistake in the award :
*Hartford Fire Insurance Co.* v. *Bonner Mercantile Co.*, 44
Fed. 151 (11 L. R. A. 628). Mr. Chief Justice MARSHALL,

in *Carnochan* v. *Christie*, 24 U. S. (11 Wheat.) 446, commenting upon the decision of arbitrators, concisely states the rule as follows : "But the award ought itself to settle finally and conclusively the whole matter referred to them. It is contrary to the principle of a general reference that the court should take the award so far as it goes and supply all omissions by its decree. The award ought to be, in itself, a complete adjustment of the controversies submitted to the arbitrators."

It is also claimed that the plaintiff is entitled to interest on the amount found to be due him from the time of his loss until the decree was rendered. The suit is not prosecuted to recover the amount awarded, and the damage sustained by plaintiff, although ascertained by the appraisers, was unliquidated until the decree was rendered, for which reason there was no error in refusing to allow interest : *Hawley* v. *Dawson*, 16 Or. 344 (18 Pac. 592); *Pengra* v. *Wheeler*, 24 Or. 532 (34 Pac. 354). It follows that the decree is affirmed.

AFFIRMED.

Decided July 26, 1897.

ON MOTION FOR LEAVE TO DRAW MONEY ON DEPOSIT.

[49 Pac. 588.]

PER CURIAM. This is a motion by plaintiff for an order permitting him to withdraw certain sums of money deposited by the defendants with the clerk of the circuit court of Multnomah County, in pursuance of a decree rendered against them. It is alleged in the complaint that plaintiff, having been engaged in manufacturing gloves in the City of Portland, insured his stock of goods, material, machinery, tools, etc., with the defendants, and, while the policies received were in force, a fire occurred, without his fault, design or procurement, in consequence

of which his property so insured, which was then of the value of $19,623.31, was partially destroyed, thereby entailing a loss of $11,741.67; that thereafter the agents of the defendants, refusing to make any proper offer to settle said loss, and taking advantage of a clause contained in each of said policies, induced the plaintiff to agree to the appointment of appraisers to adjust the same, in pursuance of which an appraiser was nominated by the plaintiff, and another by the defendants, and these persons so named selected another, who was not impartial or disinterested, but had theretofore been and was in the habit of appraising losses by fire in which the defendant companies were interested; that the persons so selected estimated the value of the property insured at the sum of $13,088, and the loss on the stock of goods and material at $3,213, and on the tools and machinery at $528. The suit was instituted to set aside the award of the appraisers, and the answer of defendants, after denying the material allegations of the complaint, avers that plaintiff caused the insured property to be burned; that the loss thereby occasioned did not exceed the sum of $3,213 on the stock of goods and material, and the additional sum of $528 to the machinery, etc.; and pray that the said submission to arbitration and the awards made by the appraisers be decreed valid and binding, and the amount so determined by the appraisers be found to be the loss sustained by plaintiff by reason of said fire, if any loss he has sustained thereby, and for further relief. A reply having put in issue the allegations of new matter contained in the answer, a trial was had, resulting in an affirmance of the award made by the appraisers, which was apportioned to the defendants as follows : Scottish Union and National Insurance Company, $723.50; Prussian National Insurance Company, $1,564.95; Magdeburg Fire Insurance Company, $659.35; Westchester

Fire Insurance Company, $793.20. The defendants thereupon deposited with the clerk the several amounts so found to be due, but plaintiff, refusing to accept the same, appeals from the decree thus rendered, and moves in this court for an order permitting him to withdraw the sums so deposited, without prejudice to his right of appeal.

It has been held in this state that where the pleadings admitted a certain amount to be due at all events, and such sum had been voluntarily tendered or paid after judgment or decree, the amount so tendered or paid may be accepted by the prevailing party, without waiving his right of appeal : *Portland Construction Co.* v. *O'Neil,* 24 Or. 54 (32 Pac. 764). " A party," says COCKRELL, C. J., in *Bolen* v. *Cumby,* 53 Ark. 514 (14 S. W. 926), " may prosecute his appeal from a judgment partly in his favor, and partly against him, even after accepting the benefit awarded him by the judgment ; *provided,* the record discloses that what he recovers is his in any event ; that is, whether the judgment be reversed or affirmed. But he waives his right to an appeal by accepting a benefit which is inconsistent with the claim of right he seeks to establish by the appeal." See also 2 Beach's Mod. Eq. § 926 and notes. The plaintiff, realizing the force of the rule announced in these cases and that his receipt for the moneys so deposited would be tantamount to an affirmance on his part of the award which he seeks to set aside, refused to accept the amount so decreed by the court. The effect of granting plaintiff's motion would be a practical affirmance of the decree appealed from without a hearing on the merits, and since he has refused to withdraw the money for fear of the consequences on the right to maintain the appeal, we, without attempting to pass upon the issues made by the pleadings, must also decline to make the order requested for fear our act might be construed as legislating in the interest of the future conduct

of the parties instead of applying the law to their past transactions. The motion must therefore be denied, and it is so ordered.

MOTION OVERRULED.

Decided at PENDLETON, 13 August, 1898.