MARTIN FARRELL *vs.* GERMAN AMERICAN INSURANCE COMPANY.

Middlesex.    November 21, 1899. — March 1, 1900.

Present: HOLMES, C. J., MORTON, BARKER, HAMMOND, & LORING, JJ.

*Fire Insurance — Action — Award — Conduct of Arbitrators.*

The writ in an action upon an award made under a policy of fire insurance was dated three days before the expiration of the time limited in the policy for bringing an action, but it was not served until about fifty days afterwards, and was duly entered at the next entry day. Two witnesses testified that they saw the writ on the day of its date. *Held,* that the action was seasonably commenced.

In this case, which was an action upon an award made under a policy of fire insurance, signed by two only of the arbitrators, the award was not invalidated by the acts of these arbitrators in the absence of the other one, consisting of experiments with articles similar to those insured, a visit to the scene of the fire and examination of the débris, conversations with other persons in relation to the case, talks with each other, and an examination of the books of one of them in regard to prices of goods.

CONTRACT, to recover upon an award made under a policy of insurance against loss by fire issued by the defendant upon the plaintiff's property in Dracut. Trial in the Superior Court,

without a jury, before *Lilley*, J., who allowed a bill of exceptions, in substance as follows.

The policy was in the form prescribed by St. 1887, c. 214, § 60, for the term of one year from February 1, 1892, and covered household furniture to the amount of $200, and stock in trade to the amount of $1,100, all situated in a frame building in Dracut, the loss being alleged to have been sustained by a fire which occurred on January 29, 1893. An agreement for arbitration as to the amount of the loss was entered into, in which Charles Callahan of Lowell was selected by the plaintiff, Joseph F. Appleton of Salem was selected by the defendant, and Charles T. Rowland of Lowell was chosen by the two so selected. These three persons duly accepted their selection as arbitrators, and an award was made on January 19, 1895, by Callahan and Rowland, in which Appleton refused to join, fixing the amount of the loss at $1,269.23. The writ was dated January 26, 1895, service was made upon the insurance commissioner on March 16, 1895, and the action was duly entered in court on the first Monday of April, 1895. The principal ground of defence was that an attempt had been made to defraud the defendant after the loss in representing goods to have been upon the premises and destroyed by the fire that were not there at the time of, and were not destroyed by, the fire, but no dispute was made as to the item of household furniture, the defendant agreeing that the plaintiff's loss thereon was $200, as claimed. Other grounds of defence relied upon at the trial were: 1. That the action had not been seasonably commenced. 2. That the acts of the arbitrators were such as to render their award invalid. 3. That, there being no valid award, the action was prematurely brought.

Upon the first point raised by the defendant, two witnesses for the plaintiff testified that they saw the writ on the day of its date.

Upon the second point, in relation to the acts of the arbitrators, one Irwin W. Smith testified that he was sent by the defendant to the scene of the fire some ten days after its occurrence to examine the débris; that the plaintiff told him that none of the débris had been moved; that he reported finding twenty-two ends and thirty-five sides of tin cans, representing

421 cans of canned goods, a pair of arctics and a lady's overshoe, representing boots, shoes, and rubbers worth $521.31, and about a bushel and a half of broken crockery, representing crockery worth about $50, all as claimed in the plaintiff's proof of loss; and that he also found unconsumed cigars, herring, beer cases, and whiskey barrels in the débris. There was conflicting testimony by a witness for the plaintiff as to the removal of some of the débris before its inspection by Smith, and the deposit of the débris so moved across the street from the location of the destroyed building. It was undisputed that, after Smith's inspection, the cellar was cleared and the débris deposited in the place across the street above referred to. There was evidence that following the first appearance of the fire there was an explosion of considerable force; that this was a quick fire; and that the inmates of the house escaped with difficulty.

Callahan, the arbitrator selected by the plaintiff, testified that, after the matter was submitted to the arbitrators and before their award and in the absence of all other persons, he subjected crockery to intense heat in his furnace, took it out and threw water upon it, and brought in the crockery so treated and exhibited it to the other arbitrators at a hearing before them at which both the plaintiff and the defendant were represented by counsel, and no objection was made.

Rowland testified that, after the matter was submitted to the arbitrators and before their award and in the absence of all other persons, he subjected tin cans to intense heat in his furnace and observed the result and reported the same to the other arbitrators.

There was evidence that the arbitrators after their last hearing went to Dracut and dug in the place where some of the plaintiff's witnesses had testified that débris had been deposited soon after the occurrence of the fire, and where it was undisputed that the débris which was in the cellar at the time of Smith's inspection had afterwards been deposited, to see whether the débris was as the plaintiff represented, or as the defendant represented. Counsel for the plaintiff and the defendant were present while the arbitrators were making their examination of the débris, and neither counsel made any objec-

tion thereto.   Relative to this matter Rowland was asked by the plaintiff's counsel: "And after that, by agreement between the counsel and the referees, was a view taken of the premises where this débris was deposited? to which he answered, "Yes." He was then examined as follows: "*Q.* Did Mr. Forbush [defendant's counsel] agree?   *A.* I did n't talk with him about it. — *Q.* Did you hear a conversation that took place there in open court about it?   *A.* I don't remember it."

Callahan was not asked about this matter, and Appleton testified that he did not remember any agreement by counsel, and thought it was simply an agreement between the arbitrators.

Rowland, on cross-examination, was asked if he did not talk with one O'Leary in relation to the case, and admitted that he did, but testified that he did not talk with him much, "not half a dozen words, all told"; and that the conversation had no effect upon his mind in making up the award.

Callahan, on cross-examination, also testified that he talked with O'Leary in relation to the case.

On redirect examination, Callahan testified that this talk did not in any manner affect him in making up the award.   It did not appear what the talk was which Rowland and Callahan had with O'Leary respectively further than that it related to the case, nor whether either talk was before or after the making of the award, nor whether any one else was present at the time of each talk.   The defendant contended that Callahan and Rowland talked with O'Leary respectively as above stated in the absence of the other arbitrators and prior to the signing of the award.   This was not disputed, but the plaintiff contended that it did not appear whether or not the conversations were of importance or influenced the minds of the arbitrators.

Rowland also testified, on cross-examination, as to a conversation with Mr. Qua, who was the auditor in a prior action by the plaintiff against the defendant, in relation to this case; and that it was not until after the award was made.

The evidence was undisputed that, after the final hearing of evidence by the arbitrators and before the award was made, Appleton had been ill; and that the other two arbitrators had met and had had conversations about the case.

Rowland testified further that he called upon one Abbott,

the local agent of the defendant at Lowell, and said to him, "We shall put in our award if we don't hear from Mr. Appleton"; that he had written to Appleton, and had not heard from him; and that the time within which the award was to be made was about expiring.

There was evidence that Rowland and Callahan made efforts from time to time to have meetings of all the arbitrators and to secure Appleton's attendance; that owing to Appleton's engagements and subsequent illness, and for other reasons, they were not successful; and that there were two or three meetings, all the arbitrators being present, at which witnesses and counsel were heard.

Rowland and Callahan each testified that at no time before going to Appleton's office on the day on which the award was signed was there any agreement between any two of the arbitrators as to what the amount thereof should be.

Callahan, on direct examination, testified that he made the award on the basis of the evidence in the case; that he had had seventeen years' experience in the grocery business, at times employing fourteen men; that at a meeting of the arbitrators, Appleton said there was no question as to the amount of the goods, but only as to their value, and contended that such goods sold at a forced sale would shrink from forty per cent to seventy-five per cent, and that he divided them in three classes, and one was forty per cent and the other was seventy-five per cent, and he thought an average would be fifty per cent; and that if the arbitrators would consider that proposition he, Appleton, was ready to settle. The evidence showed the stock to consist of dry and fancy goods, boots, shoes, and rubbers, as well as groceries; and there was no evidence that either Rowland or Callahan had had any experience in dealing in or handling any other goods than groceries, including crockery and glassware and canned goods in tin cans; while it appeared in evidence that Appleton's business was the handling of fire and collision goods, and that he made a specialty of going around and buying stocks of this character.

Callahan also testified as follows: "*Q.* Did you have any talk with any outsiders about it? *A.* I think I did. — *Q.* Was there any of them that influenced your mind in any manner

or shape as to how this award should be made?  *A.* Not at all." It did not appear what this talk was.

On cross-examination, the witness testified as follows: " Mr. Rowland called my attention and said, ' I have been through the books to see how the prices would compare with the plaintiff's prices, — been through my books at that date for similar goods, — and I find some things were charged too high and some too low, and it would be about one and three fourths per cent it would come to.'  And he said, ' I have concluded to make it two per cent.'  I said to him I would like to see the books myself.  I went down to his store one evening, and he presented the books to me, and I looked the books through a little, and as far as I went his figures were correct.  I did n't go clear through the books.  I took it for granted that he was correct.  And I agreed in the meeting that we had in Runnell's Building to make that discount."

It did not appear, otherwise than as the fact may be fairly inferred from the evidence stated, whether this meeting in Runnell's Building was one in which all three of the arbitrators were present, or a meeting between Rowland and Callahan in the absence of Appleton.  There was evidence, however, of at least one meeting of all the arbitrators in Runnell's Building.

Rowland testified, in relation to the conversation, which took place between the arbitrators at the meeting when the award was signed, as follows: " Mr. Appleton said he was very set. I said, ' If I am wrong I want to be righted.'  He said that he did n't know as he wanted to change my opinion; that I had a perfect right to my opinion, as every man had; that he had his, but if we would settle the case that he would divide the amount. I told him that I could n't do that; I had got to settle the case according to the evidence in my judgment as I saw it.  He said if that was it he could n't have any more to do with it; that he would get out of it; that there was no use for any further argument in the matter; that there were two against one, and, of course, he could n't do anything.  I asked him if he wanted to say anything, or join us, and he said ' No.' " This testimony was corroborated substantially by that of Callahan.

Appleton testified in relation to this matter as follows: " Mr. Rowland told me that they had met and had agreed upon a dis-

count of two per cent to be taken off of the whole amount of the plaintiff's claim. . . . I said, 'If you gentlemen have settled this thing what use am I in the matter, anyhow?' . . . Upon that I said that if those two gentlemen had settled the case outside of me no court would sustain it in the world, and I was out of it; I did n't care to have anything more to do with it."

There was evidence that the award was signed by Callahan and Rowland in Appleton's office at the time of their meeting; and that Appleton declined to sign it.

The defendant asked the judge to rule: "1. Upon the evidence, the plaintiff's action was not seasonably commenced. 2. Upon the evidence, the award of the arbitrators is invalid by reason of misconduct upon their part." And if the judge should rule as requested in the second request, "3. The action was prematurely brought and cannot be maintained."

The judge declined to rule as requested; found that the arbitrators acted in good faith; and found for the plaintiff in the sum of $1502.76. The defendant alleged exceptions.

*F. M. Forbush,* for the defendant.

*D. J. Donahue,* for the plaintiff.

MORTON, J. This is an action to recover upon an award for a loss under a fire insurance policy, and was heard by the court without a jury.

The first question is whether the action was seasonably commenced. The writ was dated three days before the expiration of the time limited in the policy for the bringing of an action. The date of the writ was *prima facie* evidence of the commencement of the action. *Veginan* v. *Morse,* 160 Mass. 143. *Bunker* v. *Shed,* 8 Met. 150. *Gardner* v. *Webber,* 17 Pick. 407, 412. There was nothing which as matter of law required the court to find that the writ was made provisionally. Whether it was so made or not was a question of fact, and we think that it was competent for the court to find on the evidence before it, and for aught that appears it did so find, that " the writ was made at the time it bore date, with an intention to cause it to be seasonably served on the defendant, before the term [sitting] to which it was returnable." *Bunker* v. *Shed,* 8 Met. 150, 151. It would follow from such a finding that the action was seasonably commenced.

The remaining questions relate to instances of alleged misconduct on the part of two of the arbitrators and to their effect upon the validity of the award.

The policy was in the Massachusetts standard form, and the arbitrators were appointed under the clause which provides that in case the parties fail to agree upon the amount of a loss, the matter shall be referred to three disinterested persons, one to be selected by the insured, one by the company, and the two so chosen to select a third, — the award of a majority to be final. It is manifest that the arbitration thus provided for is intended to afford a simple and speedy remedy for the settlement of disputes in regard to losses, and to simplify proceedings in case of a resort to the courts, and is not necessarily to be governed in all respects by the rules which apply to a trial in court. We think that an award so arrived at is not to be lightly set aside even though there may have been informalities or irregularities in the conduct of the proceedings, if it appears, or the court may have found, that the arbitrators making the award acted in all matters pertaining to the submission in good faith and with an honest desire to come to a correct result. In such a case, the award, it seems to us, should stand, unless it plainly appears that the acts of alleged misconduct have prejudiced or may have prejudiced the party complaining, or have violated those well settled rules which justice requires should be observed in order to ensure the fair determination of the matters in dispute. See *Nichols* v. *Nichols*, 136 Mass. 256, 260; *Straw* v. *Truesdale*, 59 N. H. 109. Whether in any given case there has been such misconduct as to require the award to be set aside, will generally be a mixed question of law and fact, mostly of fact, (*Morville* v. *American Tract Society*, 123 Mass. 129, 139,) in regard to which the finding of the trial court will of course be final. The precise question therefore in the present case is whether it can be said as matter of law that the judge who heard the case erred in refusing to rule upon the evidence before him that the award was invalid. We do not think that it can be so said.

Callahan's experiment with crockery and the results were all reported by him to the other arbitrators at a meeting at which witnesses and counsel were present, and no objection was made. If there was any irregularity, it must be deemed to have been waived.

A similar experiment by Rowland with tin cans and the results were reported by him to the other arbitrators, and come, it seems to us, fairly within such examination and testing of the evidence as was permissible to the arbitrators. *Small* v. *Trickey*, 41 Maine, 507. *Adams* v. *Bushey*, 60 N. H. 290.

It was competent, we think, for the court to find on the evidence before it that the visit of the arbitrators to Dracut and what took place there was with the knowledge and consent of both parties and their counsel. If so, there was no irregularity or misconduct in it.

The conversations between Rowland and O'Leary and Callahan and O'Leary are not stated. They may have been entirely immaterial. Rowland testified that the conversation between him and O'Leary was " not half a dozen words all told." Both testified that the conversations had no effect upon them in making up the award. It is possible also that the court may have found in these cases, as well as in regard to the conversation between Rowland and Mr. Qua, that the conversation was after the award had been made. We do not see how it can be held as matter of law that the court erred in refusing to set aside the award because of these conversations. See *Johnson* v. *Holyoke Water Power Co.* 107 Mass. 472; *Johnson* v. *Witt*, 138 Mass. 79; *Commonwealth* v. *Desmond*, 141 Mass. 200.

So also we think that it cannot be held as matter of law that the talk, which is not given, of Callahan with outsiders, requires that the award should be set aside.

The remaining matters relate to talks, in the absence of the third, between the two arbitrators who finally signed the award. Both testified that they did not come to any final conclusion until the last interview, at which all were present, and at which, after unsuccessful efforts to agree with the third arbitrator, the award was signed by them. If any excuse or justification be needed for their talking with each other, it is found, we think, in the fact which there was testimony tending to prove, that the two had made efforts to have meetings of all three of the arbitrators, and had failed on account of the engagements and illness of the third arbitrator, and for other reasons, and that, as one of them told one Abbott, the agent of the defendant company, which selected the other arbitrator, " the time within which the

award was to be made was about expiring." We see no objection to the examination which was made by the two arbitrators of Rowland's books in regard to prices. Presumably one ground at least of the selection of Rowland and Callahan was their greater or less familiarity with the business in which the plaintiff was engaged. They had the right to draw upon their own experience and knowledge in considering the matters submitted to them, and it was certainly better for all concerned to do as they did, than to trust to their unaided recollection, or to accept without question the prices to which the plaintiff had testified. See *Adams* v. *Bushey*, 60 N. H. 290; *Straw* v. *Truesdale*, 59 N. H. 109. Moreover, there is some evidence, though slight, that what they had done was communicated to the other arbitrator at a meeting when all were present.

On the whole case, we see no ground which requires as matter of law that the award should be set aside. The arbitrators who signed the award seem to have taken unusual pains to reach a correct result. They and the other arbitrator were before the court, which found that they acted in good faith, and we cannot say as matter of law that his ruling in favor of the award was wrong.                                        *Exceptions overruled.*