Ross v. Insurance Co.

MRS. A. K. ROSS *et al.*, *a Partnership, etc., Appellees,*
v. THE GERMAN ALLIANCE INSURANCE COMPANY OF
NEW YORK, *Appellant.*

No. 17,327.

SYLLABUS BY THE COURT.

1. INSURANCE—*Arbitration*—*Setting Aside Award.* In an action upon an insurance policy, where the issue was upon the validity of an award of arbitrators chosen under the terms of the policy, the fact that the amount of the loss as found by the court upon the trial greatly exceeded the amount found by the arbitrators, while not deemed sufficient proof of prejudice on the part of an arbitrator, is a circumstance to be considered together with his conduct during the proceedings and all the attendant circumstances in determining whether the award was fairly made.

2. ———— *Same.* Upon an examination of the evidence tending to show misconduct on the part of the arbitrator appointed by the defendant, his long continued services in such business for this and other insurance companies, the great difference between the amount awarded and the actual loss as found by the court upon the trial, the refusal to examine part of the goods remaining after the fire, and the attendant circumstances, it is *held* that a finding of the district court upon which the award was held invalid can not be set aside.

Appeal from Crawford district court. Opinion filed December 9, 1911. Affirmed.

*E. S. Quinton, F. B. Wheeler,* and *Fyke & Snider,* for the appellant.

*O. T. Boaz,* and *L. W. Johnson,* for the appellees.

The opinion of the court was delivered by

BENSON, J.: This action was for the recovery of a loss upon a fire insurance policy issued upon a stock of millinery. The policy contained an arbitration clause. A fire occurred, causing damage to the goods insured, and appraisers were chosen, one being named by each party, who selected an umpire. An award was made, signed

10—86 KAN.

only by one appraiser and the umpire. The company offered to pay the amount awarded, and pleaded that offer in defense. The plaintiff alleged that the appraiser chosen by the company was incompetent and not a disinterested person, and charged unfair and fraudulent conduct in making the appraisal and award. A jury having been waived, the court found for the plaintiff and gave judgment for an amount largely exceeding the award.

Questions arising in the district court upon the sufficiency of the plaintiff's pleadings are determined adversely to appellant's contention in *Ross v. Insurance Co.*, 84 Kan. 572, 114 Pac. 1054. The question to be determined here is whether there was competent evidence to sustain the finding. The policy contained a stipulation that:

"In the event of disagreement as to the amount of loss the same shall, as above provided, be ascertained by two competent and disinterested appraisers, the insured and this company each selecting one, and the two so chosen shall first select a competent and disinterested umpire; the appraisers together shall then estimate and appraise the loss, stating separately sound value and damage, and, failing to agree, shall submit their differences to the umpire; and the award in writing of any two shall determine the amount of such loss."

The evidence of what occurred at the arbitration is conflicting. There was evidence tending to prove the following facts: After the two appraisers had proceeded for about two days in examining the remaining stock and remnants, and in endeavoring to determine what had been destroyed, they disagreed upon the number of hats that had been burned up, and later they disagreed upon the damage to a bunch of ribbons. Thereupon Mr. Potts, the appraiser named by the company, brought in the umpire. Mr. Potts and the umpire then proceeded with the examination and appraisal. Mr. Anderson, the other appraiser, remained in the store

for a time, observing, but taking no part in the proceedings, except to talk with the others about the value of some furs, upon which no conclusion was reached. After a short time he left, and although requested by the others, refused to return or to take any further part in the arbitration because, as he testified, the appellees were not getting a square deal; he believed that the umpire was out of his place in acting before there was a disagreement; that it was wrong to proceed with the appraisal without consulting him; and that the appraisers ought to have tried to come to an understanding before the umpire acted. The store room in which the fire occurred was twenty-four feet wide. Many of the hats destroyed were in a closet on the north side of this room. Hats and other goods were on tables along the middle of the room, badly smoked and mildewed. Some articles were on racks on the north side, and other goods were in boxes and cases on shelves on the south side. The fire originated in the closet, where the goods were practically all destroyed by the fire, as were some goods near the closet, and other goods were damaged by water, smoke and heat. While making their examination, Mr. Potts declared to Mr. Anderson that the company was not liable for damages from water, mildew or smoke, but for visible damages only; and when asked by appellees to examine the contents of boxes and cases on the south side of the room, where the goods the most valuable were kept, said he would not consider it. Mr. Potts had been a real-estate agent at Kansas City for the preceding eight years. Before that time he was in the tailoring business at Kansas City. Twenty-five years ago he was in the general merchandise business in Vermont, and then knew the values of millinery goods. For the past twenty years he has served as appraiser upon the appointment of various insurance companies, including the appellant, acting upon about three losses per year. There

was no evidence of incompetency of the other appraiser or of the umpire.

The arbitration agreement contained the following:

"John Anderson . . . and H. A. Potts shall appraise and ascertain the sound value of and the loss upon the property damaged and destroyed by the fire of July 8th, 1909, as specified below. *Provided*, That the said *appraisers* shall *first* select a competent and disinterested umpire who shall act with them in matters of difference *only*. The award of any two of them, made in writing, in accordance with this agreement, shall be binding upon both parties to this agreement as to the amount of such loss."

The award made by Mr. Potts and the umpire fixed the sound value of the goods at $4000, and the loss at $838.02, and the appellant's portion of the loss so found (other insurance having been taken) was $98.60. With reference to the estimate of sound value the umpire testified:

"We did n't invoice the stock and measure every piece and count every dozen buttons, or every bolt of ribbon, but after sizing the things up we came to that conclusion. It was the value as near as we could come to it without taking accurate invoice of the entire stock. I was n't called in to take an invoice. We partly examined the contents of the boxes, not all."

Mrs. Ross testified that "they (Anderson and Potts) never at any time examined the contents on the south side. I spoke to Potts about it and he told me to attend to my own business, he said he would n't consider it." Mr. Anderson testified that no examination was made of goods on the south side of the room. Mr. Potts testified that they made no report of the goods on the south side of the room, and did n't count any of the merchandise on that side at all; that he did n't remember to have examined any of these boxes with Mr. Seymour (the umpire). As there was other insurance to the amount of $4000 upon the stock and the district court gave judgment for $500, the full amount of the policy

sued upon, it follows that the court found the loss to be at least $4500. While some difference of opinion might be expected concerning the loss upon such a stock, it is difficult to see how a difference so great as that between the loss found by the award, and by the judgment can be accounted for upon the assumption that both were fairly determined.

Little need be said concerning the competency of Mr. Potts. It is true he was not an expert in the values of millinery, but exact personal knowledge was not required. It was only necessary that he should have such general knowledge and understanding as would enable him upon reasonable investigation, inquiry and examination to form a candid judgment and make a fair appraisal. (*Bangor Savings Bank v. Insurance Co.*, 85 Maine, 68, 26 Atl. 991.) The mere fact that the award was greatly less than the court found to be the actual loss is not deemed sufficient proof of bias or prejudice on the part of an arbitrator, but is a circumstance proper to be considered in connection with the conduct of the appraisers and other attendant circumstances in determining whether an award was fairly made. (*Strome v. London Assurance Corp.*, 20 N. Y. Supr. Ct., App. Div., 571, affirmed in 162 N. Y. 627, 57 N. E. 1125; *Perry v. Insurance Co.*, 137 N. C. 402, 49 S. E. 889; *Royal Ins. Co. v. Parlin & Orendorff Co.*, 12 Tex. Civ. App. 572, 34 S. W. 401; *Davis v. Guardian Assurance Co.*, 94 N. Y. Supr. Ct. 414; *Stemmer v. Insurance Company*, 33 Ore. 65, 49 Pac. 588, 53 Pac. 498; Morse, Arbitration and Award, p. 539; 3 Cyc. 749.)

In the Perry case the jury assessed the damages to the property at $750 while the award was for only $73.50. In *Bradshaw et al. v. A. Ins. Co.*, 137 N. Y. 137, 32 N. E. 1055, the verdict was for $2750 and the award was for $1760.31, and the court considered this a very large difference in such a total, and a circumstance to be considered in finding whether an appraiser named by the insurance company was disin-

terested. In the opinion in that case weight was also given to the fact that the appraiser appointed by the insurance company had been employed by the company about ten times in the preceding two years in appraising losses, and by that and other companies fifteen times in the preceding three years. It is true that the evidence of partisanship was stronger in that case than in this, still it must be held here that the long continued similar service of Mr. Potts, although not a disqualification, was a proper matter for the court to consider along with his hasty call of the umpire, his declaration against the allowance of incidental damage from smoke and mildew and his refusal to consider damage to the contents of the south side. That damage from smoke and water should be considered in such cases is too well established to admit of the supposition that he believed it was not proper. (1 Wood, Fire Ins., 2d ed., § 106.) Besides, it was not for the appraisers to determine the liability of the insurer, their duty was to determine the sound value and the loss upon the property caused by the fire.

Another circumstance should be noticed. The appraiser, when one of the owners spoke to him about the goods on the south side, not only refused to consider the matter, but told her "to mind her own business." It was entirely proper for her to call attention to these goods, and the sharp rebuke was not indicative of a dispassionate mind seeking all proper sources of information. (3 Cyc. 748.) In *Kaiser v. Hamburg-Bremen Fire Ins. Co.,* 59 N. Y. Supr. Ct., App. Div., 525, affirmed in 172 N. Y. 663, 65 N. E. 1118, a somewhat similar case, it was said:

"We think it is a fact that may be taken judicial notice of that it is usual and customary for the owner or his representative to make statements to the appraisers, and their failure in this instance to listen to such statements is some evidence in support of the contention that Vanderwerf was not an unprejudiced, unbiased and disinterested appraiser." (p. 530.)

(See, also, *Insurance Co. v. Payne*, 57 Kan. 291, 46 Pac. 315.)

It should also be noted that the arbitration agreement provided that the umpire should act with the appraisers "in matters of difference only." While the appraiser appointed by the appellant testified that there was a disagreement on practically everything, the other appraiser testified, as we have seen, to the contrary, and his testimony, in view of the general finding, must be taken as true. When the umpire came in, he with Mr. Potts, proceeded to make the appraisment of the whole stock, ignoring Mr. Anderson, as he testified, although afterwards requesting him to return and act with them. It appears that no effort was made to find the sound value before the umpire was called in.

Upon a careful examination of the abstracts it can not be held that the finding of the district court against the sufficiency of the award is not sustained by competent evidence, and although there was evidence to the contrary, that finding must prevail. The weight of the evidence was for that court to determine.

"Whether, in any given case, there has been such misconduct as to require the award to be set aside, will generally be a mixed question of law and fact—mostly fact  .  .  .  —in regard to which the finding of the trial court will, of course, be final." (*Farrell v. German American Ins. Co.*, 175 Mass. 340, 347, 56 N. E. 572.)

With the award set aside, as it was by the general finding and judgment, there was sufficient evidence to sustain the further finding of the amount of the loss, and the judgment rendered thereon is therefore affirmed.

PORTER, J. (dissenting) : The parties agreed to an appraisement. Each selected an appraiser, and the two appraisers, as provided by the terms of the policy, selected an umpire who was to act in case of disagreement. There was a disagreement as to the amount of the loss and the umpire was called in. Afterward the

appraiser named by the insured came to the conclusion that he was being ignored by the others, and, without any lawful excuse, withdrew from the appraisement and refused to have anything further to do with it. The appraisal went on, with the knowledge of the insured and without objection on her part, and the award was made and signed by the other appraiser and the umpire. The agreement for appraisement provides that in case the umpire is called in the award of any two of the three shall be binding.

There is not much left in this case to decide, except whether the appraiser appointed by one of the parties can break up the appraisement by arbitrarily withdrawing. If he can, then either appraiser may act so long as he considers that the party appointing him is getting an advantageous award; and the moment he is dissatisfied with any decision made by the other two upon a disputed matter he may end the arbitration by simply withdrawing and refusing further to act. This can hardly be the law, for reasons too obvious to require discussion. The insured was present while the other appraisers were proceeding with the appraisement and knew that Anderson, the one appointed by her, had refused to act with them. She made no objection to their continuing with the appraisement, and appeared before the umpire and the other appraiser and endeavored to get them to allow damages for certain goods which she claimed had been destroyed, and to increase the amount of the award. A party cannot be permitted to speculate upon the result of such an appraisement and to stand by it provided it is favorable to him and refuse to be bound by it if it prove to be unfavorable.

"Where a party to an arbitration learns facts which make an arbitrator incompetent, but thereafter proceeds with the hearing without objection to his incompetency, and takes the chances of a favorable decision, he will be deemed to have waived his objection, and will not be permitted to raise the same after an award has

been made." (*Anderson v. Burchett*, 48 Kan. 153, syl. ¶ 3, 29 Pac. 315.)

The opinion proceeds upon the theory that if the appraiser appointed by the insurance company is shown to have served in that capacity for the company on previous occasions, or for other insurance companies, that fact and the further fact that the court upon the evidence submitted on the trial finds the loss to be greater than the amount of the award, will justify the court in holding the award invalid. The opinion concedes that neither of these facts is of itself sufficient to warrant the court in setting aside the award. In my opinion both taken together are not sufficient. The courts encourage the settlement of controversies involving the value of property by arbitration. The rules upon which an award will be set aside are well established. The fact that one of the parties may be able to satisfy a court or jury that he should have been allowed more or that the other should have been allowed less is no ground for holding the award void, in the absence of fraud or misconduct on the part of the appraisers. Nor does an honest error of the arbitrators in applying the rules of evidence render the award invalid. (*Stemmer v. Insurance Company*, 33 Ore. 65, 49 Pac. 588, 53 Pac. 498.)

As said in 3 Cyc. 673:

"Courts do not travel out of their way for the purpose of overturning awards; but, on the other hand, they will refrain from exact and technical interpretation, and will indulge every reasonable presumption, whenever there is any room for such indulgence, in favor of the finality and validity of an award."

If sufficient grounds existed for setting aside the award I agree that the finding of facts by the trial court would be conclusive; but the facts relied upon to avoid the award are not, in my opinion, sufficient. Unless fraud or misconduct on the part of the appraisers was clearly established, the court could not inquire into the actual loss, and set the award aside because in the

judgment of the court the amount allowed by the arbitrators was inadequate. The judgment should be reversed and the court directed to sustain the award.

JOHNSTON, C. J.: I concur in this dissent.